**Martha REYES, Plaintiff,**

v.

**WYETH PHARMACEUTICALS, INC., et al., Defendants.**

**Civil No. 05–1617 (FAB).**

United States District Court, D. Puerto Rico.

March 9, 2009.

Arlene R. Perez—Borrero, Colon & Colon, PSC, San Juan, PR, Eduardo A. Vera–Ramirez, Luis A. Rodriguez–Munoz, Landron & Vera LLP, Guaynabo, PR, for Plaintiff.

Edna Hernandez–Arroyo, Avila, Martinez & Hernandez, San Juan, PR, for Defendants.

## OPINION AND ORDER

FRANCISCO A. BESOSA, District Judge.

On November 13, 2007 defendants Wyeth Pharmaceuticals, Inc. ("Wyeth"), Amgen Inc. ("Amgen"), and ERC Integrated Communications, Inc. ("ERC") filed a motion for summary judgment (Docket No. 82). Plaintiff Martha Reyes ("Reyes") failed to file a timely opposition. On January 22, 2008 Reyes filed a motion requesting an extension of time to file her opposition (Docket No. 90). The Court denied Reyes's motion for an extension of time as well as a motion for reconsideration of the order denying the extension (Docket Nos. 92 & 94), and stated that the motion for summary judgment would be considered unopposed (Docket No. 92). The only issue raised in the motion for summary judgment is whether defendants' use of

Reyes's sculpture in their advertising campaign constitutes a "fair use."

For the reasons provided below, the Court **DENIES** defendants' motion for summary judgment.

## I. Factual Background

Reyes, an artist and an author, created a glass sculpture called "Watcher of the Fire" ("the Watcher") in 2001. This sculpture was part of a series entitled "Guardians of the Four Elements." In or around February 2003, Reyes gave defendant Felix Cordero ("Cordero") the Watcher sculpture so that he would take a picture of it. Standing alone (rather than as part of the set alongside the other "guardians"), Reyes valued the Watcher at $2,500, but she did not exhibit it or offer it for sale prior to loaning it to Cordero. While Cordero possessed the sculpture he offered it to Wyeth, Amgen and ERC for use in a publicity campaign called "Salud Wyeth."

Defendants describe Salud Wyeth (meaning Wyeth Health) as an ongoing public service campaign intended to educate the public about the need to lead a healthy life, and to raise awareness about health risks associated with various ailments. The campaign was launched on May 15, 2003 and it has addressed topics as varied as gastrointestinal issues, female health issues and cardiovascular conditions. The Salud Wyeth campaign has been promoted through newspapers, magazines, billboard advertisements and commercials in movie theaters and on television. The campaign has not included references to Wyeth pharmaceutical products.

Salud Wyeth included a sub-campaign called "naci para crear" (meaning "I was born to create") related to rheumatoid arthritis ("RA"). Defendants submit that they intended for the sub-campaign to raise awareness to the existence of RA and to motivate people suffering from the disease to seek information and treatment. ERC created an advertisement for the "naci para crear" campaign which appeared in the El Nuevo Dia newspaper on May 6, 2004 and again on May 20, 2004.[1] The advertisement contains a picture of a woman holding a rectangularly shaped stained glass sculpture.[2] The bottom of the sculpture and the woman's body from about mid-torso downwards are cropped out of the picture. The top of the advertisement has the caption "Wyeth Health." The photo is overlaid with the following text in large letters: "I was born to create ..." This in turn is followed by "but I was diagnosed with rheumatoid arthritis (RA). Many of the treatments I tried didn't work the way I wanted, but the other day my doctor had a surprise for me that could help." Below the cropped picture, the advertisement contains the following text: "Consult your rheumatologist about treatments that can inhibit progressive joint damage and reduce pain, rigidity and fatigue associated with rheumatoid arthritis so you can continue doing things you enjoy. Regain your creativity!" This is followed by a reference to the following web-

---

1. The amended complaint also contains an allegation that Reyes's sculpture appeared in a television advertisement. Nonetheless, the record before the Court does not contain information about the television advertisement and therefore it is not referenced in the Court's analysis.

2. In the amended complaint, Reyes asserts that the woman in the advertisement is "Mrs. Ferraiouli," the wife of a well-known artist who produces glass sculptures. Moreover, Reyes asserts that Mrs. Ferraiouli works with her husband. These are powerful potential facts but they are not reflected in the materials submitted as part of the record for summary judgment. Therefore they are not part of the Court's analysis. *See* Local Civil Rule 56(e).

site: www.reumapr.org.[3] The bottom of the advertisement contains a symbol for the Rheumatologists of Puerto Rico Association as well as the Amgen and Wyeth logos.

Reyes recognized the sculpture in the advertisement as being the Watcher. Although the record is unclear as to what exactly transpired between Reyes and Cordero following the publication of the advertisement, it is clear that Reyes communicated with the authorities, which lead to the filing of criminal charges against Cordero on October 27, 2004. In that charging document, Cordero is accused of illegally selling, publishing or copying the Watcher. A second, and perhaps superseding charging document was filed on November 22, 2004 in which Cordero was charged with criminally misappropriating the Watcher. The local court dismissed the charges against Cordero on April 12, 2005, apparently because Reyes agreed not to pursue the charges against Cordero after he agreed to pay her $2,500 for the Watcher, which he claimed to have destroyed.

In August 2004, Reyes began studying for a masters degree in literature at Sacred Heart University. She took classes for two years. During this time Reyes continued to produce works of art. In 2005 she participated in an art exhibit at the University of Turabo. On May 18, 2006 Reyes participated in an exhibit called the "Crystal Passage" (Pasadizo de Cristal) in which she exhibited approximately 18 to 20 separate works. She began work on the pieces that she would exhibit at the "Crystal Passage" in December, 2005. Reyes also participated in an exhibit for the pediatric diabetes foundation in November of 2006. Among the

works she exhibited and sold in 2006 was a second set of four sculptures called the "Guardians of the Four Elements." This set included one sculpture called the "Watcher of Fire." This second set of watchers measured about 24 by 12 inches whereas the first set measured about 36 by 24 inches. Reyes explained in her deposition that she designed the second set of watchers "from another angle" than the original set because the original set had been exposed to the media. The second group of four sculptures sold as a set for a total of $6,000, or $1,500 each.

## II. Discussion

### A. Summary Judgment Standard

The Court's discretion to grant summary judgment is governed by Rule 56 of the Federal Rules of Civil Procedure. The Rule states, in pertinent part, that the court may grant summary judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED.R.CIV.P. 56(c); *see also Santiago–Ramos v. Centennial P.R. Wireless Corp.,* 217 F.3d 46, 52 (1st Cir.2000). The party moving for summary judgment bears the burden of showing the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

Once a properly supported motion has been presented, the opposing party has the burden of demonstrating that a trial-worthy issue exists that would warrant the court's denial of the motion for

---

**3.** As of February 25, 2009, this website identifies itself as the site for the Rheumatologists Association of Puerto Rico. The record is bereft of any evidence, however, that provides the information that was available on the site at the time that the advertisements were published.

summary judgment. For issues where the opposing party bears the ultimate burden of proof, that party cannot merely rely on the absence of competent evidence, but must affirmatively point to specific facts that demonstrate the existence of an authentic dispute. *See Suarez v. Pueblo Int'l, Inc.*, 229 F.3d 49, 53 (1st Cir.2000).

In order for a factual controversy to prevent summary judgment, the contested facts must be "material" and the dispute must be "genuine." Material means that a contested fact has the potential to change the outcome of the suit under governing law. The issue is genuine when a reasonable jury could return a verdict for the nonmoving party based on the evidence. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). It is well-settled that "[t]he mere existence of a scintilla of evidence" is insufficient to defeat a properly supported motion for summary judgment. *Id.* at 252, 106 S.Ct. 2505. It is therefore necessary that "a party opposing summary judgment must present definite, competent evidence to rebut the motion." *Maldonado–Denis v. Castillo–Rodriguez*, 23 F.3d 576, 581 (1st Cir.1994).

In making this assessment, the court "must view the entire record in the light most hospitable to the party opposing summary judgment, indulging in all reasonable inferences in that party's favor." *Griggs–Ryan v. Smith*, 904 F.2d 112, 115 (1st Cir.1990). The court may safely ignore, however, "conclusory allegations, improbable inferences, and unsupported speculation." *Medina–Muñoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir.1990).

## B. The Fair Use Standard

Section 106 of the Copyright Act grants copyright holders like Reyes[4] a bundle of exclusive rights including the right to display her copyrighted sculpture publicly and the right to prepare derivative works based on the copyrighted sculpture. 17 U.S.C. § 106. These exclusive rights are qualified, however, by the fair use doctrine incorporated into section 107 of the Act. 17 U.S.C. § 107. This doctrine mediates between the "inevitable tension" created by copyright law between a creator's property right in a creative work and the right of others to express themselves in reference to the creator's work. *Blanch v. Koons*, 467 F.3d 244, 250 (2d Cir.2006).

Section 107 provides that the use of a copyrighted work for purposes such as criticism, comment, news reporting, teaching, scholarship, or research may constitute fair use. 17 U.S.C. § 107; *see Harper & Row, Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 549 & 561, 105 S.Ct. 2218, 85 L.Ed.2d 588 (1985). These examples are "illustrative and not limitative;" they provide "only general guidance as to the sorts of copying that courts and Congress most commonly had found to be fair uses." *Campbell v. Acuff–Rose Music, Inc.*, 510 U.S. 569, 577–78, 114 S.Ct. 1164, 127 L.Ed.2d 500 (1994). To determine whether an unauthorized use was fair depends upon a case-by-case evaluation of four non-exclusive factors. *Harper & Row*, 471 U.S. at 549, 105 S.Ct. 2218. These four statutorily provided factors are: "(1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes; (2) the nature of the copyrighted work; (3) the amount and substantiality of the portion used in relation to the copy-

4. Again, the sole issue raised in defendants motion is whether they made a fair use of Reyes's sculpture. At this stage they do not argue that Reyes may not properly assert a claim for copyright infringement for any other reason.

righted work as a whole; and (4) the effect of the use upon the potential market for or value of the copyrighted work." 17 U.S.C. § 107. These factors guide, but do not control fair use analysis. *Castle Rock Entm't Inc. v. Carol Publ'g Group*, 150 F.3d 132, 141 (2d Cir.1998) (citations omitted). The ultimate determination of fair use requires that the four factors be weighed together in light of the purpose of copyright, *Nuñez v. Caribbean Int'l News Corp.*, 235 F.3d 18, 21 (1st Cir.2000) (citing *Campbell*, 510 U.S. at 578, 114 S.Ct. 1164 (1994)): promoting the Progress of Science and useful Arts. *Campbell*, 510 U.S. at 578, 114 S.Ct. 1164 (quoting the U.S. Const., Art. I, § 8, cl. 8).

■ Although fair use, an affirmative defense, is a mixed question of law and fact, a district court may resolve issues of fair use at summary judgment where there is no genuine issue of material fact relevant to the fair use determination. *See Harper & Row*, 471 U.S. at 560–61, 105 S.Ct. 2218; *Bill Graham Archives v. Dorling Kindersley Ltd.*, 448 F.3d 605, 608 (2d Cir.2006).

### C. Purpose And Character Of The Use

■ This first factor focuses upon whether the new work "merely supersedes the objects of the original creation, or instead adds something new, with a further purpose or different character, altering the first with new expression, meaning, or message; it asks, in other words, whether and to what extent the new work is 'transformative.'" *Campbell*, 510 U.S. at 579, 114 S.Ct. 1164. Other factors that may weigh against a finding of fair use, such as commercialism, decline in significance to the extent that a work is more transformative. *Id.*

■ At first blush, defendants' use of the Watcher hardly appears transformative. Although the record is bereft of evidence concerning Reyes's precise motivation for creating the Watcher of Fire, the Court draws certain obvious inferences. Reyes produced the Watcher intending to sell it. As a work of display art, she intended that the Watcher be appreciated visually. She incorporated the concept of fire into the Watcher, and she intended for it to be presented alongside other "guardians" of earth, air and water. In the "Naci para crear" advertisement, defendants photographed the sculpture in the hands of a woman. The sculpture was not altered in any way. The advertisement contained no comments or editorials concerning the sculpture itself. These aspects of the publicity suggest that the defendants' use of the Watcher was not even slightly transformative because ERC presents the Watcher as a work of art for a viewer's visual appreciation. *See On Davis v. The Gap, Inc.*, 246 F.3d 152 (2d Cir.2001) (finding "nothing transformative about the [defendant's] presentation of [plaintiff's] copyrighted" eyewear in a clothing advertisement because it was "worn as eye jewelry in the manner it was made to be worn"); *Ringgold v. Black Entertainment Television, Inc.*, 126 F.3d 70, 79 (2d Cir.1997) (finding that the use of a poster of plaintiff's painting as a decoration for a television program's set was not transformative because it was used for the same decorative purpose as the original). In addition, the Watcher is presented as an example of a creative work.

The Court notes, however, that the purpose behind the advertisement itself is to raise awareness concerning RA and treatment options available for people suffering from RA. The implicit message of the image combined with the text is that the woman depicted, either in reality or as a representative archetype of an artist, suffers from RA and yet, because of treatments currently available, she was not inhibited from creating the Watcher. This

message differs from the purpose or message involved in the sculpture itself, which has nothing to do with RA. At the same time, this additional message does not completely change the character of the sculpture which is still presented to the viewer as a creative work of art. Accordingly, the Court finds defendants' use of the Watcher to be somewhat transformative (but not overwhelmingly so).

■■ Above and beyond the manner in which the sculpture was displayed in the advertisement, defendants argue that the first factor should weigh in their favor because the "naci para crear" advertisement was part of a public service educational campaign, that was not "of a commercial nature." Defendants support this argument by noting that the campaign does not promote any particular product or treatment, that it is supported by the Rheumatologists Association of Puerto Rico, and by referring to a statement by Elliott Ramirez Perez ("Ramirez"), the President of ERC, in which he stated that the campaign was not aimed at increasing revenue for Wyeth or Amgen. These distinctions, however, do not carry the day. "The crux of the profit/nonprofit distinction is not whether the sole motive of the use is monetary gain but whether the user stands to profit from exploitation of the copyrighted material without paying the customary price." *Harper & Row*, 471 U.S. at 562, 105 S.Ct. 2218. This inquiry requires the Court to look beyond Ramirez's stated intention.

As defendants aver, the advertisement at issue in this case ("naci para crear") does not specifically reference a Wyeth or Amgen product. Nonetheless, the Wyeth and Amgen logos are displayed along the bottom of the advertisement. The presence of these logos in the advertisement suggest to the viewer that Wyeth and Amgen may offer products or procedures for people suffering from RA. The advertise-

ment also serves to build goodwill towards Wyeth and Amgen. Both generalized goodwill and an association between Wyeth and remedies for various ailments are also present in the larger, ongoing campaign of which "naci para crear" is but a sub-campaign. This is apparent from the name of the very campaign, "Salud Wyeth" or Wyatt Health. Thus, despite the proffered non-commercial purpose for the advertisement campaign, defendants appear to benefit from it. Because they did not compensate Reyes for the use of her sculpture this sub-factor (of the first statutory factor) favors Reyes, although it does not carry much weight. *See Nuñez*, 235 F.3d at 22 ("For a commercial use to weigh heavily against a finding of fair use, it must involve more than simpl[e] publication in a profit-making venture.").

■ Defendants' good faith or lack thereof constitutes another sub-factor focused upon by Courts as part of the "purpose and character of use" analysis. *See Harper & Row*, 471 U.S. at 562–63, 105 S.Ct. 2218; *Nuñez*, 235 F.3d at 23. Unfortunately, the record before the Court at this stage is less than helpful. It appears possible that many of the people involved in the production of the "naci para crear" advertisement had no clue that the Watcher was a copyrighted work of art and that the defendants had not obtained the rights to use the sculpture. At the same time, the Court has been presented with no reason why Cordero's actions should not be attributed to his fellow defendants in this case. On the record before the Court, Cordero knew that the sculpture belonged to Reyes; in fact he had been loaned the sculpture solely to photograph it for Reyes. Nonetheless, Cordero utilized the sculpture in the "naci para crear" campaign without first seeking Reyes' permission. At some point thereafter, Cordero actually destroyed the sculpture and did

not make amends to Reyes until after she instigated criminal procedures against him. These actions do not exhibit good faith. While the ultimate destruction of the sculpture is irrelevant to the copyright claim, the key issue in regards to good faith is that Cordero knew that Reyes created and owned the sculpture and yet he did not seek her permission to utilize it in the "naci para crear" advertisement.

On the whole, this first statutory factor, purpose and character of use, neither weighs strongly for or against a finding of fair use. Although defendants' use of the Watcher was somewhat transformative, it was minimally so. Similarly, although defendants present the "naci para crear" and "Salud Wyeth" campaigns as educational and non-commercial enterprises, the Court finds that they nonetheless stand to profit from them, and thus from the utilization of the Watcher. Lastly, in utilizing the Watcher as part of the "naci para crear" campaign, Cordero did not act in good faith. Because the profit/nonprofit distinction and the good faith sub factors do not carry overwhelming weight, when viewed alongside an only somewhat transformative use, the final balance is neutral.

### D. Nature Of The Copyrighted Work

■ "This factor calls for recognition that some works are closer to the core of intended copyright protection than others, with the consequence that fair use is more difficult to establish when the former works are copied." *Campbell*, 510 U.S. at 586, 114 S.Ct. 1164.

Two types of distinctions as to the nature of the copyrighted work have emerged that have figured in the decisions evaluating the second factor: (1) whether the work is expressive or creative, such as a work of fiction, or more factual, with a greater leeway being allowed to a claim of fair use where the work is factual or informational, and (2) whether the work is published or unpub-

lished, with the scope for fair use involving unpublished works being considerably narrower.

*Blanch*, 467 F.3d at 256 (quoting 2 Howard B. Abrams, *The Law of Copyright*, § 15:52 (2006)).

■ Defendants do not dispute that the Watcher is a creative work of art. Such works are traditionally the core of intended copyright protection. *See, e.g., Bill Graham Archives*, 448 F.3d at 612. Rather, defendants argue that the Court should mitigate the weight of this factor because defendants did not seek to profit directly from Reyes's creativity. *See Amsinck v. Columbia Pictures Indus.*, 862 F.Supp. 1044, 1050 (S.D.N.Y.1994). The Court disagrees with defendants' characterization of their use of the Watcher. The advertisement, which consists of a photograph with text layered over it, clearly displays two things and two things only: the Watcher and the woman holding it. As discussed above, the text explains that the woman was born to create. Although most of the employees of the named defendants may not have thought of the Watcher as anything more than a prop, that is irrelevant. Even putting aside the focus of the advertisement upon the Watcher (a relevant fact), the text of the advertisement specifically references the creativity involved in the Watcher because it is displayed as the example of what the woman was born to create. Thus, the Court finds that the second factor, nature of the copyrighted work, weighs against a finding of fair use.

### E. Amount And Substantiality Of The Portion Used

■ The third factor focuses upon whether " 'the quantity and value of the materials used,' are reasonable in relation to the purpose of the copying." *Campbell*, 510 U.S. at 586, 114 S.Ct. 1164 (quoting

*Folsom v. Marsh,* 9. F.Cas. 342, 348 (No. 4,901) (CCD Mass. 1841)). In this instance the advertisement contains a photograph of nearly the entire sculpture but for a small part of the bottom and top that are cropped out of the picture. Although copying an entire work usually weighs against a finding of fair use, *Sony Corp. of Amer. v. Univ. City Studios, Inc.,* 464 U.S. 417, 450, 104 S.Ct. 774, 78 L.Ed.2d 574 (1984), courts have also found that such copying may be consistent with fair use. *See, e.g., Bill Graham Archives,* 448 F.3d at 613; *Nuñez,* 235 F.3d at 24. This has occurred where the entire image may be necessary for fair use, *Kelly v. Arriba Soft Corp.,* 336 F.3d 811, 821 (9th Cir.2003), as well as where the reproduced image occurs only in a small part of the challenged work. *See Amsinck,* 862 F.Supp. at 1050.

In this instance defendants used the Watcher as an example of a creative work which in turn allowed them to communicate their overall message that treatment is available for people with RA that allows them to be physically active and produce artwork such as sculptures. Defendants' message certainly could have been communicated in ways that did not involve the Watcher, but that is not the focus of this inquiry. Given that defendants chose to present an artist exhibiting art, their message could not have been communicated as effectively by obscuring or including only part of the sculpture. Thus the Court finds that the defendants did not copy more of the Watcher than was necessary to communicate their message. Accordingly, this factor neither weighs for nor against a finding of fair use. *See Kelly,* 336 F.3d at 821.

### F. Effect Of The Use Upon The Market For Or Value Of The Copyrighted Work

 The fourth statutory factor, "the effect of the use upon the potential market for or value of the copyrighted work," 17 U.S.C. § 107, "requires courts to consider not only the extent of market harm caused by the particular actions of the alleged infringer[s], but also whether unrestricted and widespread conduct of the sort engaged in by the defendant would result in a substantially adverse impact on the potential market for the original." *Campbell,* 510 U.S. at 590, 114 S.Ct. 1164 (punctuation and citation omitted). This factor "must take account not only of harm to the original but also of harm to the market for derivative works." *Id.* (quoting *Harper & Row,* 471 U.S. at 568, 105 S.Ct. 2218). In other words, this factor focuses upon secondary uses of the copyrighted work that "by offering a substitute for the original, usurp a market that properly belongs to the copyright holder." *Nuñez,* 235 F.3d at 24 (quoting *Infinity Broad. Corp. v. Kirkwood,* 150 F.3d 104, 110 (2d Cir.1998)). The impact of the contested use upon plaintiff's overall business bears no relevance upon the fair use inquiry. *Id.* Nonetheless, this appears to be the focus of defendants' argument.

 Defendants argue that subsequent to the publication of the "naci para crear" advertisements, Reyes continued to produce and sell glass sculptures. In fact, Reyes produced another sculpture called the Watcher of Fire and even produced an entire set of guardians of the elements, all of which she sold. Defendants also note that Cordero destroyed the original Watcher of Fire, adding that he ultimately compensated Reyes for the destruction of her sculpture. This latter fact is the only one of some bearing upon the fourth factor. What it exemplifies however, is that the record at summary judgment is underdeveloped. The underdeveloped record is detrimental to defendants' fair use argument. Contrary to defendants' unsupported assertion, because fair use is an affirmative defense, they bear the burden of

demonstrating that Reyes's interest in markets for derivative works of the Watcher that she would generally develop (or license to others to develop) was not harmed. *See Campbell,* 510 U.S. at 590 & 592, 114 S.Ct. 1164.

The record is silent as to if there was a derivative use market for the inclusion of Reyes's sculptures, and the Watcher in particular, in advertisements or other visual media. This lack of clarity in the record alone would not necessarily tip the fourth factor away from a finding of fair use because it is only relevant to part of the analysis. The Court must also ask whether wide scale use of works of art (or sculptures in particular) in advertisements or other visual media would in general affect the market for such artwork. *Nuñez,* 235 F.3d at 24–25. While this is a somewhat *nuanced* question (depending upon the purpose of the sculpture and how it is used in the visual media) it is clear that widespread use of artwork in advertisements without permission of the copyright holder would destroy the market for selling the artwork for use in advertisements. Accordingly, because the record concerning potential markets in this case is not adequately developed, and because widespread conduct like the conduct engaged in by the defendants would negatively impact a potential market for sculptures, the Court finds that the fourth statutory factor does not favor fair use.

### G. Ultimate Determination Of Fair Use

In the final analysis the four statutory factors must be weighed together.[5] As discussed above the Court finds that the first factor, purpose and character of the use of the Watcher, neither weighs for or against a finding of fair use. Although defendants' use of the sculpture was somewhat transformative, this is balanced by the Court's finding that defendants stood to profit from their use of the Watcher and by the Court's finding that Cordero acted in bad faith. The Court comes to the same conclusion regarding the third factor. Defendants' use of nearly the entire sculpture was consistent with exhibiting it as a creative work of art. Thus the amount and substantiality of the portion of the sculpture used neither militates for or against a finding of fair use. The second and fourth factors on the other hand, both disfavor a finding of fair use because the Watcher is a creative work of art which highly deserves copyright protection and because the record does not show that Reyes's interest in a derivative market that could generally be developed was not harmed.

When weighed together, as they must be, these factors tilt the scales against a finding of fair use. Consideration of the general purpose of copyright law, the promotion of Science and useful Arts, does not suggest to the Court that it should find otherwise.

### III. Conclusion

For the reasons stated above, the Court **DENIES** defendants' motion for summary judgment.

**IT IS SO ORDERED.**

---

**5.** Defendants (as well as Reyes in her motion that was struck from the record) rely upon dictum from *Harper & Row* to state that the fourth factor, the effect of the use upon the potential market for or value of the copyrighted work, is the single most important factor. *Blanch,* 467 F.3d at 258 n. 8; *On Davis,* 246 F.3d at 175. *Campbell* teaches, however, that all four of statutory factors should be "explored, and the results weighed together, in light of the purposes of copyright." *Campbell,* 510 U.S. at 578, 114 S.Ct. 1164; *accord Castle Rock Entm't. Inc.,* 150 F.3d at 145.