**Leslie A. KELLY, an individual, dba Les Kelly Publications, dba Les Kelly Enterprises, dba Show Me The Gold, Plaintiff–Appellant,**

v.

**ARRIBA SOFT CORPORATION, an Illinois Corporation, Defendant–Appellee.**

No. 00–55521.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Sept. 10, 2001.

Opinion Filed Feb. 6, 2002.

Withdrawn July 7, 2003.

Re-filed July 7, 2003.

Charles D. Ossola, Arnold & Porter, Washington, DC, for the plaintiff-appellant.

Steven Krongold, Arter and Hadden, Irvine, CA, for the plaintiff-appellant.

Judith B. Jennison, Perkins Coie LLP, San Francisco, CA, for the defendant-appellee.

Victor S. Perlman, American Society of Media Phographers, Inc., Philadelphia, PA, for amici curiae National Music Publishers' Association.

Laura W. Brill and Elliot Brown, Irell & Manella, L.L.P., Los Angeles, CA, for amici curiae AltaVista Co., Google, Inc., and Yahoo! Inc.

Fred von Lohmann, Electronic Frontier Foundation, San Francisco, CA, for amici curiae Electronic Frontier Foundation.

Before B. FLETCHER, T.G. NELSON, and BERZON, Circuit Judges.

## ORDER

T.G. NELSON, Circuit Judge.

The Opinion filed February 6, 2002, and appearing at 280 F.3d 934 (9th Cir.2002), is withdrawn. It may not be cited as precedent by or to this court or any district court of the Ninth Circuit.

Therefore, Appellee's petition for rehearing and the petition for rehearing en banc are DENIED as moot.

## OPINION

This case involves the application of copyright law to the vast world of the internet and internet search engines. The plaintiff, Leslie Kelly, is a professional photographer who has copyrighted many of his images of the American West. Some of these images are located on Kelly's web site or other web sites with which Kelly has a license agreement. The defendant, Arriba Soft Corp.,[1] operates an internet search engine that displays its results in the form of small pictures rather than the more usual form of text. Arriba obtained its database of pictures by copying images from other web sites. By clicking on one of these small pictures, called "thumbnails," the user can then view a large version of that same picture within the context of the Arriba web page.

When Kelly discovered that his photographs were part of Arriba's search engine database, he brought a claim against Arriba for copyright infringement. The district court found that Kelly had established a prima facie case of copyright infringement based on Arriba's unauthorized reproduction and display of Kelly's works, but that this reproduction and display constituted a non-infringing "fair use" under Section 107 of the Copyright Act. Kelly

appeals that decision, and we affirm in part and reverse in part. The creation and use of the thumbnails in the search engine is a fair use. However, the district court should not have decided whether the display of the larger image is a violation of Kelly's exclusive right to publicly display his works. Thus, we remand for further proceedings consistent with this opinion.

### I.

The search engine at issue in this case is unconventional in that it displays the results of a user's query as "thumbnail" images. When a user wants to search the internet for information on a certain topic, he or she types a search term into a search engine, which then produces a list of web sites that contain information relating to the search term. Normally, the list of results is in text format. The Arriba search engine, however, produces its list of results as small pictures.

To provide this service, Arriba developed a computer program that "crawls" the web looking for images to index. This crawler downloads full-sized copies of the images onto Arriba's server. The program then uses these copies to generate smaller, lower-resolution thumbnails of the images. Once the thumbnails are created, the program deletes the full-sized originals from the server. Although a user could copy these thumbnails to his computer or disk, he cannot increase the resolution of the thumbnail; any enlargement would result in a loss of clarity of the image.

The second component of the Arriba program occurs when the user double-clicks on the thumbnail. From January 1999 to June 1999, clicking on the thumbnail produced the "Images Attributes"

---

1. Arriba Soft has changed its name since the start of this litigation. It is now known as "Ditto.com."

page. This page used in-line linking to display the original full-sized image, surrounded by text describing the size of the image, a link to the original web site, the Arriba banner, and Arriba advertising.

In-line linking allows one to import a graphic from a source website and incorporate it in one's own website, creating the appearance that the in-lined graphic is a seamless part of the second web page.[2] The in-line link instructs the user's browser to retrieve the linked-to image from the source website and display it on the user's screen, but does so without leaving the linking document.[3] Thus, the linking party can incorporate the linked image into its own content. As a result, although the image in Arriba's Images Attributes page came directly from the originating web site and was not copied onto Arriba's server, the user would not realize that the image actually resided on another web site.

From July 1999 until sometime after August 2000, the results page contained thumbnails accompanied by two links: "Source" and "Details." The "Details" link produced a screen similar to the Images Attributes page but with a thumbnail rather than the full-sized image. Alternatively, by clicking on the "Source" link or the thumbnail from the results page, the site produced two new windows on top of the Arriba page. The window in the forefront contained solely the full-sized image. This window partially obscured another window, which displayed a reduced-size version of the image's originating web page. Part of the Arriba web page was visible underneath both of these new windows.[4]

In January 1999, Arriba's crawler visited web sites that contained Kelly's photographs. The crawler copied thirty-five of Kelly's images to the Arriba database. Kelly had never given permission to Arriba to copy his images and objected when he found out that Arriba was using them. Arriba deleted the thumbnails of images that came from Kelly's own web sites and placed those sites on a list of sites that it would not crawl in the future. Several months later, Arriba received Kelly's complaint of copyright infringement, which identified other images of his that came from third-party web sites. Arriba subsequently deleted those thumbnails and placed those third-party sites on a list of sites that it would not crawl in the future.

The district court granted summary judgment in favor of Arriba. Kelly's motion for partial summary judgment asserted that Arriba's use of the thumbnail images violated his display, reproduction, and distribution rights. Arriba cross-moved for summary judgment. For the purposes of the motion, Arriba conceded that Kelly established a prima facie case of infringement. However, it limited its concession to the violation of the display and reproduction rights *as to the thumbnail images.* Arriba then argued that its use of the thumbnail images was a fair use.

The district court did not limit its decision to the thumbnail images alone. The court granted summary judgment to Arriba, finding that its use of both the thumb-

2. Mark Sableman, *Link Law Revisited: Internet Linking Law at Five Years*, 16 BERKELEY TECH. L.J. 1273, 1297 (2001).

3. Stacey L. Dogan, *Infringement Once Removed: The Perils of Hyperlinking to Infringing Content*, 87 IOWA L. REV. 829, 839 n. 32 (2002).

4. Currently, when a user clicks on the thumbnail, a window of the home page of the image appears on top of the Arriba page. There is no window just containing the image.

nail images and the full-size images was fair. In doing so, the court broadened the scope of Kelly's original motion to include a claim for infringement of the full-size images. The court also broadened the scope of Arriba's concession to cover the prima facie case for both the thumbnail images and the full-size images. The court determined that two of the fair use factors weighed heavily in Arriba's favor. Specifically, the court found that the character and purpose of Arriba's use was significantly transformative and the use did not harm the market for or value of Kelly's works. Kelly now appeals this decision.

## II.

■ We review a grant of summary judgment *de novo*.[5] We also review the court's finding of fair use, which is a mixed question of law and fact, by this same standard.[6] "In doing so, we must balance the nonexclusive factors set out in 17 U.S.C. § 107."[7]

The district court's decision in this case involves two distinct actions by Arriba that warrant analysis. The first action consists of the reproduction of Kelly's images to create the thumbnails and the use of those thumbnails in Arriba's search engine. The second action involves the display of Kelly's larger images when the user clicks on

the thumbnails. We conclude that, as to the first action, the district court correctly found that Arriba's use was fair. However, as to the second action, we conclude that the district court should not have reached the issue because neither party moved for summary judgment as to the full-size images and Arriba's response to Kelly's summary judgment motion did not concede the prima facie case for infringement as to those images.

### A.

■ An owner of a copyright has the exclusive right to reproduce, distribute, and publicly display copies of the work.[8] To establish a claim of copyright infringement by reproduction, the plaintiff must show ownership of the copyright and copying by the defendant.[9] As to the thumbnails, Arriba conceded that Kelly established a prima facie case of infringement of Kelly's reproduction rights.

■ A claim of copyright infringement is subject to certain statutory exceptions, including the fair use exception.[10] This exception "permits courts to avoid rigid application of the copyright statute when, on occasion, it would stifle the very creativity which that law is designed to foster."[11] The statute sets out four factors to consider in determining whether the use in a particular case is a fair use.[12]

---

5. *Los Angeles News Serv. v. Reuters Television Int'l. Ltd.*, 149 F.3d 987, 993 (9th Cir.1998).

6. *Id.*

7. *Id.*

8. 17 U.S.C. § 106.

9. *Hustler Magazine, Inc. v. Moral Majority, Inc.*, 796 F.2d 1148, 1151 (9th Cir.1986) (quoting 3 M. Nimmer & D. Nimmer, *Nimmer on Copyright* § 13.01 (1985)).

10. 17 U.S.C. §§ 106, 107.

11. *Dr. Seuss Enters., L.P. v. Penguin Books USA, Inc.*, 109 F.3d 1394, 1399 (9th Cir.1997) (internal quotation marks omitted).

12. The four factors are: (1) the purpose and character of the use, including whether such use is of a commercial nature or is for non-profit educational purposes; (2) the nature of the copyrighted work; (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and (4) the effect of the use upon the potential market for or value of the copyrighted work. 17 U.S.C. § 107.

We must balance these factors in light of the objectives of copyright law, rather than view them as definitive or determinative tests.[13] We now turn to the four fair use factors.

### 1. *Purpose and character of the use.*

■ The Supreme Court has rejected the proposition that a commercial use of the copyrighted material ends the inquiry under this factor.[14] Instead,

[t]he central purpose of this investigation is to see ... whether the new work merely supersede[s] the objects of the original creation, or instead adds something new, with a further purpose or different character, altering the first with new expression, meaning, or message; it asks, in other words, whether and to what extent the new work is transformative.[15]

The more transformative the new work, the less important the other factors, including commercialism, become.[16]

■ There is no dispute that Arriba operates its web site for commercial purposes and that Kelly's images were part of Arriba's search engine database. As the district court found, while such use of Kelly's images was commercial, it was more incidental and less exploitative in nature than more traditional types of commercial use.[17] Arriba was neither using Kelly's images to directly promote its web site nor trying to profit by selling Kelly's images. Instead, Kelly's images were among thousands of images in Arriba's search engine database. Because the use of Kelly's images was not highly exploitative, the commercial nature of the use weighs only slightly against a finding of fair use.

The second part of the inquiry as to this factor involves the transformative nature of the use. We must determine if Arriba's use of the images merely superseded the object of the originals or instead added a further purpose or different character.[18] We find that Arriba's use of Kelly's images for its thumbnails was transformative.

Although Arriba made exact replications of Kelly's images, the thumbnails were much smaller, lower-resolution images that served an entirely different function than Kelly's original images. Kelly's images are artistic works intended to inform and to engage the viewer in an aesthetic experience. His images are used to portray scenes from the American West in an aesthetic manner. Arriba's use of Kelly's images in the thumbnails is unrelated to any aesthetic purpose. Arriba's search engine functions as a tool to help index and improve access to images on the internet and their related web sites. In fact, users are unlikely to enlarge the thumbnails and use them for artistic purposes because the thumbnails are of much lower-resolution than the originals; any enlargement results in a significant loss of clarity of the image, making them inappropriate as display material.

Kelly asserts that because Arriba reproduced his exact images and added nothing

13. *Dr. Seuss,* 109 F.3d at 1399.

14. *Campbell v. Acuff–Rose Music, Inc.,* 510 U.S. 569, 579, 114 S.Ct. 1164, 127 L.Ed.2d 500 (1994).

15. *Id.* (internal quotation marks and citation omitted) (alteration in original).

16. *Id.*

17. *See, e.g., A & M Records, Inc. v. Napster, Inc.,* 239 F.3d 1004, 1015 (9th Cir.2001) ("[C]ommercial use is demonstrated by a showing that repeated and exploitative unauthorized copies of copyrighted works were made to save the expense of purchasing authorized copies.").

18. *Campbell,* 510 U.S. at 579, 114 S.Ct. 1164.

to them, Arriba's use cannot be transformative. Courts have been reluctant to find fair use when an original work is merely retransmitted in a different medium.[19] Those cases are inapposite, however, because the resulting use of the copyrighted work in those cases was the same as the original use. For instance, reproducing music CDs in computer MP3 format does not change the fact that both formats are used for entertainment purposes. Likewise, reproducing news footage into a different format does not change the ultimate purpose of informing the public about current affairs.

Even in *Infinity Broadcast Corp. v. Kirkwood*,[20] where the retransmission of radio broadcasts over telephone lines was for the purpose of allowing advertisers and radio stations to check on the broadcast of commercials or on-air talent, there was nothing preventing listeners from subscribing to the service for entertainment purposes. Even though the intended purpose of the retransmission may have been different from the purpose of the original transmission, the result was that people could use both types of transmissions for the same purpose.

This case involves more than merely a retransmission of Kelly's images in a different medium. Arriba's use of the images serves a different function than Kelly's use—improving access to information on the internet versus artistic expression. Furthermore, it would be unlikely that anyone would use Arriba's thumbnails for illustrative or aesthetic purposes because enlarging them sacrifices their clarity. Because Arriba's use is not superseding Kelly's use but, rather, has created a different purpose for the images, Arriba's use is transformative.

Comparing this case to two recent cases in the Ninth and First Circuits reemphasizes the functionality distinction. In *Worldwide Church of God v. Philadelphia Church of God, Inc.*,[21] we held that copying a religious book to create a new book for use by a different church was not transformative.[22] The second church's use of the book was merely to make use of the same book for another church audience. The court noted that "where the use is for the same intrinsic purpose as [the copyright holder's] ... such use seriously weakens a claimed fair use." [23]

On the other hand, in *Núñezez v. Caribbean International News Corp.*,[24] the First Circuit found that copying a photograph that was intended to be used in a modeling portfolio and using it instead in a news article was a transformative use.[25] By putting a copy of the photograph in the newspaper, the work was transformed into news, creating a new meaning or purpose for the work. The use of Kelly's images in Arriba's search engine is more analogous to the situation in *Núñezez* because Arriba has created a new purpose for the images

---

**19.** *See Infinity Broad. Corp. v. Kirkwood*, 150 F.3d 104, 108 (2d Cir.1998) (concluding that retransmission of radio broadcast over telephone lines is not transformative); *UMG Recordings, Inc. v. MP3.com, Inc.*, 92 F.Supp.2d 349, 351 (S.D.N.Y.2000) (finding that reproduction of audio CD into computer MP3 format does not transform the work); *Los Angeles News Serv.*, 149 F.3d at 993 (finding that reproducing news footage without editing the footage "was not very transformative").

**20.** 150 F.3d 104.

**21.** 227 F.3d 1110 (9th Cir.2000).

**22.** *Id.* at 1117.

**23.** *Id.* (internal quotation marks omitted) (alteration and ellipses in original).

**24.** 235 F.3d 18 (1st Cir.2000).

**25.** *Id.* at 22–23.

and is not simply superseding Kelly's purpose.

■ The Copyright Act was intended to promote creativity, thereby benefitting the artist and the public alike. To preserve the potential future use of artistic works for purposes of teaching, research, criticism, and news reporting, Congress created the fair use exception.[26] Arriba's use of Kelly's images promotes the goals of the Copyright Act and the fair use exception. The thumbnails do not stifle artistic creativity because they are not used for illustrative or artistic purposes and therefore do not supplant the need for the originals. In addition, they benefit the public by enhancing information-gathering techniques on the internet.

In *Sony Computer Entertainment America, Inc. v. Bleem*,[27] we held that when Bleem copied "screen shots" from Sony computer games and used them in its own advertising, it was a fair use.[28] In finding that the first factor weighed in favor of Bleem, we noted that "comparative advertising redounds greatly to the purchasing public's benefit with very little corresponding loss to the integrity of Sony's copyrighted material."[29] Similarly, this first factor weighs in favor of Arriba due to the public benefit of the search engine and the minimal loss of integrity to Kelly's images.

### 2. *Nature of the copyrighted work.*

■ "Works that are creative in nature are closer to the core of intended copyright protection than are more fact-based works."[30] Photographs that are meant to be viewed by the public for informative and aesthetic purposes, such as Kelly's, are generally creative in nature. The fact that a work is published or unpublished also is a critical element of its nature.[31] Published works are more likely to qualify as fair use because the first appearance of the artist's expression has already occurred.[32] Kelly's images appeared on the internet before Arriba used them in its search image. When considering both of these elements, we find that this factor weighs only slightly in favor of Kelly.

### 3. *Amount and substantiality of portion used.*

■ "While wholesale copying does not preclude fair use per se, copying an entire work militates against a finding of fair use."[33] However, the extent of permissible copying varies with the purpose and character of the use.[34] If the second-

---

**26.** 17 U.S.C. § 107 ("[T]he fair use of a copyrighted work ... for purposes such as criticism, comment, news reporting, teaching (including multiple copies for classroom use), scholarship, or research, is not an infringement of copyright."); *see also Campbell*, 510 U.S. at 576–77, 114 S.Ct. 1164.

**27.** 214 F.3d 1022 (9th Cir.2000).

**28.** *Id.* at 1029.

**29.** *Id.* at 1027.

**30.** *A & M Records*, 239 F.3d at 1016 (citing *Campbell*, 510 U.S. at 586, 114 S.Ct. 1164) (internal quotation marks omitted).

**31.** *Harper & Row Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 564, 105 S.Ct. 2218, 85 L.Ed.2d 588 (1985) (noting that the scope of fair use is narrower with respect to unpublished works because the author's right to control the first public appearance of his work weighs against the use of his work before its release).

**32.** *Id.*

**33.** *Worldwide Church of God*, 227 F.3d at 1118 (internal quotation marks omitted).

**34.** *Campbell*, 510 U.S. at 586–87, 114 S.Ct. 1164.

ary user only copies as much as is necessary for his or her intended use, then this factor will not weigh against him or her.

■ This factor neither weighs for nor against either party because, although Arriba did copy each of Kelly's images as a whole, it was reasonable to do so in light of Arriba's use of the images. It was necessary for Arriba to copy the entire image to allow users to recognize the image and decide whether to pursue more information about the image or the originating web site. If Arriba only copied part of the image, it would be more difficult to identify it, thereby reducing the usefulness of the visual search engine.

4. *Effect of the use upon the potential market for or value of the copyrighted work.*

■ This last factor requires courts to consider "not only the extent of market harm caused by the particular actions of the alleged infringer, but also 'whether unrestricted and widespread conduct of the sort engaged in by the defendant ... would result in a substantially adverse impact on the potential market for the original.' "[35] A transformative work is less likely to have an adverse impact on the market of the original than a work that merely supersedes the copyrighted work.[36]

Kelly's images are related to several potential markets. One purpose of the photographs is to attract internet users to his web site, where he sells advertising space as well as books and travel packages. In addition, Kelly could sell or license his photographs to other web sites or to a stock photo database, which then could offer the images to its customers.

Arriba's use of Kelly's images in its thumbnails does not harm the market for Kelly's images or the value of his images. By showing the thumbnails on its results page when users entered terms related to Kelly's images, the search engine would guide users to Kelly's web site rather than away from it. Even if users were more interested in the image itself rather than the information on the web page, they would still have to go to Kelly's site to see the full-sized image. The thumbnails would not be a substitute for the full-sized images because the thumbnails lose their clarity when enlarged. If a user wanted to view or download a quality image, he or she would have to visit Kelly's web site.[37] This would hold true whether the thumbnails are solely in Arriba's database or are more widespread and found in other search engine databases.

Arriba's use of Kelly's images also would not harm Kelly's ability to sell or license his full-sized images. Arriba does not sell or license its thumbnails to other parties. Anyone who downloaded the thumbnails

---

35. *Id.* at 590, 114 S.Ct. 1164 (quoting 3 M. Nimmer & D. Nimmer, *Nimmer on Copyright* § 13.05[A][4] (1993)) (ellipses in original).

36. *See id.* at 591, 114 S.Ct. 1164 (stating that a work that supersedes the object of the original serves as a market replacement for it, making it likely that market harm will occur, but when the second use is transformative, market substitution is less certain).

37. We do not suggest that the inferior display quality of a reproduction is in any way dispositive or will always assist an alleged infringer in demonstrating fair use. In this case, however, it is extremely unlikely that users would download thumbnails for display purposes, as the quality full-size versions are easily accessible from Kelly's web sites.

In addition, we note that in the unique context of photographic images, the quality of the reproduction may matter more than in other fields of creative endeavor. The appearance of photographic images accounts for virtually their entire aesthetic value.

would not be successful selling full-sized images enlarged from the thumbnails because of the low resolution of the thumbnails. There would be no way to view, create, or sell a clear, full-sized image without going to Kelly's web sites. Therefore, Arriba's creation and use of the thumbnails does not harm the market for or value of Kelly's images. This factor weighs in favor of Arriba.

■ Having considered the four fair use factors and found that two weigh in favor of Arriba, one is neutral, and one weighs slightly in favor of Kelly, we conclude that Arriba's use of Kelly's images as thumbnails in its search engine is a fair use.

### B.

As mentioned above, the district court granted summary judgment to Arriba as to the full-size images as well. However, because the court broadened the scope of both the parties' motions for partial summary judgment and Arriba's concession on the prima facie case, we must reverse this portion of the court's opinion.

■ With limited exceptions that do not apply here, a district court may not grant summary judgment on a claim when the party has not requested it.[38] The parties did not move for summary judgment as to copyright infringement of the full-size images. Further, Arriba had no opportunity to contest the prima facie case for infringement as to the full-size images.[39] Accordingly, we reverse this portion of the district court's opinion and remand for further proceedings.

### CONCLUSION

We hold that Arriba's reproduction of Kelly's images for use as thumbnails in Arriba's search engine is a fair use under the Copyright Act. However, we hold that the district court should not have reached whether Arriba's display of Kelly's full-sized images is a fair use because the parties never moved for summary judgment on this claim and Arriba never conceded the prima facie case as to the full-size images. The district court's opinion is affirmed as to the thumbnails and reversed as to the display of the full-sized images. We remand for further proceedings consistent with this opinion. Each party shall bear its own costs and fees on appeal.

AFFIRMED in part, REVERSED in part, and REMANDED.

---

**38.** *See Kilroy v. Ruckelshaus,* 738 F.2d 1448, 1452 (9th Cir.1984).

**39.** *See United States v. Grayson,* 879 F.2d 620, 625 (9th Cir.1989).