NEWMAN, Circuit Judge,
dissenting.
The Korean War Veterans Memorial is a work of public art and a national monument. It was authorized by Congress, installed on the National Mall, and paid for by appropriated funds. My colleagues on this panel now hold that the persons who produced this public monument for the United States, under a contract which requires that copyright is in the United States, can nonetheless require the United States to pay damages for copyright infringement based on use of a photograph of the Memorial in snow on a postage stamp. This holding is contrary to the contract provisions, contrary to statute for works done in the service of the United States, contrary to copyright law, and contrary to national policy governing access to public monuments. I respectfully dissent from the court’s holding that the United States is liable for infringement of an improperly obtained and unlawfully enforced copyright.
DISCUSSION
The United States, through the Department of the Army, entered into Architect-Engineer Contract No. DACA31-90-C-0057 (April 11, 1990), with Cooper-Lecky Architects as the prime contractor, to design and then to build the Korean War Veterans Memorial. After various procedures, Mr. Frank C. Gaylord was selected as the sculptor for The Column, a collection of nineteen larger-than-life steel soldiers, which was the focal point of the Memorial. Several groups, including the Korean War Veterans Memorial Advisory Board, the American Battle Monuments Commission, the National Capital Planning *1382 Commission, the National Capital Memorial Commission, and the Fine Arts Commission, were active participants in the design of the Memorial. The Memorial is a powerful and beautiful achievement. My colleagues rule that the United States is liable for copyright infringement by placing a photograph of the Memorial on a postage stamp.[1] However, my colleagues on this panel are incorrect in ruling that the United States has no right to use an image of the Memorial for governmental purposes.
I
The Contract between the United States and Cooper-Leeky Architects bars them from “asserting] or authorizing] others to neither assert any rights nor establish any claim under the design patent or copyright laws.” DACA31-90-C-0057 (April 11, 1990). The contract contains the following provisions with respect to copyright:
1-28 GOVERNMENT RIGHTS (UNLIMITED) (MAR 1979).
The Government shall have unlimited rights, in all drawings, designs, specifications, notes and other works developed in the performance of this contract, including the right to use same on any other Government design or construction without additional compensation to the Contractor. The contractor hereby grants to the Government a paid-up license throughout the world to all such works to which he may assert or establish any claim under design patent or copyright laws ...
1-29 DRAWINGS AND OTHER DATA TO BECOME PROPERTY OF GOVERNMENT (MAR 1979).
All designs, drawings, specifications, notes and other works developed in the performance of this contract shall become the sole property of the Government. ... The Government shall be considered the “person for whom the work was prepared” for the purpose of authorship in any copyrightable work under 17 U.S.C. § 201(b). With respect thereto, the contractor agrees not to assert or authorize others to assert any rights nor establish any claim under the design patent or copyright laws....
The term “works” includes “graphic and sculptural works,” DFARS 252.227-7020(a), and it is not disputed that the graphic and sculptural works of the Memorial are included in this definition. The Contract refers to § 201(b), which provides as follows:
17 U.S.C. § 201(b) Works made for hire.
In the case of a work made for hire, the employer or other person for whom the work was prepared is considered the author for purposes of this title, and, unless the parties have expressly agreed otherwise in a written instrument signed by them, owns all of the rights comprised in the copyright.
No such “written instrument” has been shown. To the contrary, the United States has consistently declared its copyright ownership with respect to the Memorial. The Contracting Officer has demanded the assignment of any copyrights that Cooper-Lecky or Mr. Gaylord has obtained. See infra. These are the copyrights that this court now holds to be enforceable against the United States.
In addition, 28 U.S.C. § 1498(b) bars copyright enforcement against the United States under the conditions that here exist. This statute provides that:
*1383 Hereafter, whenever the copyright in any work protected under the copyright laws of the United States shall be infringed by the United States, by a corporation owned or controlled by the United States,., the exclusive action which may be brought for such infringement shall be an action by the copyright owner against the United States in the Court of Federal Claims for the recovery of his reasonable and entire compensation as damages for such infringement, including the minimum statutory damages ...: Provided, however, That this subsection shall not confer a right of action on any copyright owner or any assignee of such owner with respect to any copyrighted work prepared by a person while in the employment or service of the United States ... or in the preparation of which Government time, material, or facilities were used....
28 U.S.C. § 1498(b). This is the statute under which Mr. Gaylord brought this suit. Thus, even if Mr. Gaylord held a valid copyright, enforcement against the United States is barred by the terms of this statute, for the sculptures were prepared “in the service of the United States,” and “Government time, material, or facilities were used.” Work “in the service of the United States” does not require being an “employee,” and “one may have a ‘service’ relationship with the federal government that does not constitute an ‘employment relationship’,” as explained in Walton v. United States, 551 F.3d 1367, 1370 (Fed.Cir.2009) (federal prisoner was in “service of the United States” for artistic work for which he received compensation).
Mr. Gaylord’s position as subcontractor under the prime contract with Cooper-Lecky plainly, without dispute, places this work in the service of the United States. This contract established the relationship between the United States and the prime contractor Cooper-Lecky and subcontractors including Mr. Gaylord, and identified the United States as the “person for whom the work was prepared” pursuant to 17 U.S.C. § 201(b). The various federal agencies oversaw the overall design of the Memorial and The Column, and provided design details of the soldiers, their ethnicity, their military rank, their equipment, them arrangement. These collaborators oversaw, on behalf of the United States, the work for which Mr. Gaylord had been hired. Although the panel majority argues that this does not convert them into joint authors, that is irrelevant to the undisputed fact that this woi*k was done in the service of the United States, with payment for the work by the United States, as agreed with the United States.
The record states that the United States paid Mr. Gaylord $775,000 for his work, including the design of smaller and then full size models for the nineteen soldiers and supervision of the steel casting, and that Cooper-Lecky was paid over five million dollars, including casting, construction, and other costs. All work was done as agreed by the United States, and the initial contract underwent nineteen modifications.
Despite the copyright provisions in the contract, Cooper-Lecky and Mr. Gaylord registered various copyrights as the work progressed, and the record reports assorted debates concerning the right to profit from peripheral commercial activity, the record mentioning such items as coffee mugs, framed pictures, and small models of the soldiers in The Column. In May 1993 Cooper-Lecky wrote Mr. Gaylord that “the American Battle Monuments Commission had withdrawn them claim for copyright ownership and/or royalties received from same,” and Cooper-Lecky and Mr. Gaylord entered an “Agreement for *1384 Copyright Licensing Program,” which states that
1. ... Gaylord is entitled to retain sole ownership of the copyright for the Soldier Sculptures [including] the sketches, reproductions, photographs, prints and all drawings.
5. Gaylord acknowledges that Cooper-Lecky is the sole author of the collective work embodied by the overall Memorial [including] the individual soldier sculptures authored by Gaylord.
Neither the United States nor any government agency was a party to this agreement. Whatever this agreement accomplished as between its parties, it cannot constitute a relinquishment of the government’s rights under the contract or pursuant to 28 U.S.C. § 1498(b). Indeed, when the government was later asked, the Army’s Contracting Officer made a strong and unequivocal demand for assignment of the “improperly registered copyrights,” and sending the Decision to contractor Cooper-Lecky and subcontractor Gaylord:
6. In accordance with the contract terms, Cooper-Lecky was paid for its services and work on the KWVM, and the Government was given exclusive control over the data, design, and the completed work of the KWVM. The contract clauses ensure the Government’s unlimited rights to the KWVM and prevent the contractor or subcontractors from restricting the Government or the public’s use of the KWVM.
7. The Contractor having taken an action that is proscribed by the contract, an appropriate remedy is to execute assignments of the improperly registered copyrights to the Government, so that they may remain in the public domain as intended. Cooper-Lecky (or its successor) shall assign its copyrights in the KWVM to the Government, and enlist its subcontractors to do the same.
11. The contractor, and all others who might purport to derive copyrights with respect to work performed under contract number DACA31-90-C-0057, shall immediately cease and desist any communication or suggestion to the public or to any Government agency to the effect that there is a copyright on the KWVM or any elements thereof.
Final Decision of the Engineers Contracting Officer of the U.S. Army Engineer District, Baltimore, February 23, 2000. This document, marked as Trial Exhibit 14, is in the record provided to this court, as are the other contracts and other material relevant to these relationships. See Datascope Corp. v. SMEC, Inc., 879 F.2d 820, 822 n. 1 (Fed.Cir.1989) (noting that the decision on appeal may be affirmed on alternative grounds that are supported by the record). Yet my colleagues on this panel hold that the entirety of these events must be ignored.
The panel majority suggests that it is improper for the court to consider the government’s rights, stating that they were not briefed on this appeal. These aspects were before the Court of Federal Claims, and the record is replete with all of the contracts, as well as the Contracting Officer’s decision on copyright ownership. See Kamen v. Kemper Fin. Services, Inc., 500 U.S. 90, 99, 111 S.Ct. 1711, 114 L.Ed.2d 152 (1991) (“When an issue or claim is properly before the court, the court is not limited to the particular legal theories advanced by the parties, but rather retains the independent power to identify and apply the proper construction of governing law.”).
Section 1498(b) of Title 28 is the statute under which this suit was brought, and its provisions control Mr. Gaylord’s right of *1385 enforcement of these copyrights. Mr. Gaylord invoked § 1498(b) in his complaint, and the copyrights he now seeks to enforce against the United States are for the work he performed for the United States. The panel majority holds that these copyrights are indeed enforceable against the United States, despite the contractual and statutory obligations under which he was hired, worked, and was paid by the United States. However, the court’s disregard of the public’s ownership of its War Memorial, and casual negation of contractual and statutory provisions relating to copyright, is simply untenable. Cf. Dorris v. Absher, 179 F.3d 420, 426 (6th Cir.1999) (concluding that a court may raise aspects sua sponte “when the failure to do so would constitute a miscarriage of justice.”).
The provisions of the contract with the United States, and the statutory constraints of § 1498(b) are unambiguous as to the copyright issues concerning the Korean War Veterans Memorial. Whatever artistic or commercial rights remain with or could be allocated to Mr. Gaylord, the contractual and statutory rights of the United States control. With respect to the issue presented, the United States has an unencumbered right to use a picture of the Korean War Veterans Memorial for governmental purposes.
It is not disputed that use of a photograph of the Memorial on a postage stamp is use by the United States; indeed, that is the basis for the panel majority’s ruling of copyright infringement by the United States. My colleagues are incorrect in ruling that Mr. Gaylord can enforce, against the United States, copyrights on the work he did for the United States. This is an important question, of significant public concern, and should not be decided by default. See, e.g., United States Nat. Bank of Ore. v. Independent Ins. Agents of America, Inc., 508 U.S. 439, 445-46, 113 S.Ct. 2173, 124 L.Ed.2d 402 (1993) (“[A] court may consider an issue ‘antecedent to ... and ultimately disposi-tive of the dispute before it, even an issue the parties fail to identify and brief.”); Arcadia v. Ohio Power Co., 498 U.S. 73, 77, 111 S.Ct. 415, 112 L.Ed.2d 374 (1990)(same).
II
The Court of Federal Claims decided the case on the ground of fair use, holding that the depiction of the Korean War Veterans Memorial on the postage stamp is a “transformative” work. The court explained that the image on the stamp has a “new and different character” from the sculpture at the Memorial, depicting a “surrealistic environment with snow and subdued lighting where the viewer is left unsure whether he is viewing a photograph of statutes or actual human beings.” Gaylord v. United States, 85 Fed.Cl. 59, 68-69 (2008). Mr. Alli’s photograph was further edited by the Postal Service, to amplify the stark effect of the snowy image.
Clear error has not been shown in the Court of Federal Claims’ factual findings supporting the statutory factors of fair use. A transformative work is generally deemed a fair use of a copyrighted work. See Bill Graham Archives v. Dorling Kindersley Ltd., 448 F.3d 605 (2d Cir.2006); Blanch v. Koons, 467 F.3d 244 (2d Cir.2006); Kelly v. Arriba Soft Corp., 336 F.3d 811, 818-20 (9th Cir.2003). This finding of fair use of itself establishes the right of the United States to use a picture of the Memorial on a United States postage stamp, without liability for copyright infringement.
The Contracting Officer observed that the contractors’ assertion of copyright “unreasonably and unfairly impact[s] the end users of the Memorial,” and “producéis] a *1386 chilling effect on the public’s ability to use the [Memorial] as intended.” Final Decision of the Engineers Contracting Officer of the U.S. Army Engineer District, Baltimore, February 23, 2000 at 7. The use for governmental purposes of a photograph of the Korean War Veterans Memorial, a public monument that was designed and built with public money, is unambiguously covered by the contract and statutes under which this Memorial was built. The court errs in its holding that Mr. Gaylord is entitled to damages for copyright infringement.

. The photographer, Mr. John Alii, was paid for the use of his photograph on the stamp. The record states that Mr. Alii paid Mr. Gay-lord a royalty on all receipts based on this photograph.