**NOT FOR PUBLICATION**

**FILED**

UNITED STATES COURT OF APPEALS

JAN 2 2026

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| JEFFREY B. SEDLIK, an individual, | No. 24-3367 |
| Plaintiff - Appellant, | D.C. No. 2:21-cv-01102-DSF-MRW |
| v. | MEMORANDUM[*] |
| KATHERINE VON DRACHENBERG, an individual; AKA Kat Von D; KAT VON D, INC., a California corporation; HIGH VOLTAGE TATTOO, INC., a California corporation, | |
| Defendants - Appellees. | |

Appeal from the United States District Court
for the Central District of California
Dale S. Fischer, District Judge, Presiding

Argued and Submitted July 14, 2025
Pasadena, California

Before: WARDLAW, MENDOZA, and JOHNSTONE, Circuit Judges.

Jeffrey B. Sedlik appeals the district court's denial of his motions for

summary judgment, for judgment as a matter of law, and for a new trial, following

a jury verdict finding that Katherine Von Drachenberg ("KVD") and her tattoo

parlor, High Voltage Tattoo ("HVT"), were not liable for copyright infringement

---

* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

of Sedlik's photograph ("the Photograph").[1]  This case arose because KVD used Sedlik's iconic photograph of Miles Davis as the basis of a tattoo of Davis's likeness for her client ("the Tattoo").  KVD also drew a sketch of the Photograph ("the Sketch") and made several social media posts related to the Tattoo and the Photograph.[2]  The jury found that six allegedly infringing works—the Tattoo, the Sketch, the "Messy Progress Post," the "Final Tattoo Post," the "Instagram Story," and the "Light Box Post"—were not substantially similar to the Photograph. While KVD stipulated that the four "Process Images," which depicted KVD in the process of inking the Tattoo, were substantially similar to the Photograph (because they contained a reproduction of the Photograph), the jury found that those works were not infringing because they were a fair use of the Photograph.  We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

1.      Sedlik's Rule 50(b) motion as to fair use was procedurally foreclosed by his failure to file a Rule 50(a) motion as to fair use at trial.  *E.E.O.C. v. Go Daddy Software, Inc.*, 581 F.3d 951, 961 (9th Cir. 2009) ("A Rule 50(b) motion for judgment as a matter of law is not a freestanding motion.  Rather, it is a renewed

---

[1] We address Sedlik's appeal of the district court's denial of his motion for summary judgment and motion for judgment as a matter of law in a per curiam opinion filed concurrently with this memorandum disposition.

[2] Following the district court's terminology, we refer to the social media posts as the "Messy Progress Post," the "Final Tattoo Post," the "Instagram Story," the "Light Box Post," and the "Process Images."

Rule 50(a) motion."). Just as the district court could not enter judgment as a matter of law for Sedlik on fair use because of this procedural error, we cannot do so on appeal. *See Tortu v. Las Vegas Metro. Police Dep't.*, 556 F.3d 1075, 1083 (9th Cir. 2009) (failure to file a Rule 50(a) motion "precludes consideration of a Rule 50(b) motion for judgment as a matter of law").

2.  As to the four "Process Posts" that KVD stipulated were substantially similar, the jury found that the "Process Posts" were not infringing because they were a fair use of the Photograph. The district court did not abuse its discretion in declining to order a new trial on the basis that the jury's verdict on fair use was against the clear weight of the evidence. When, as here, "the basis of a Rule 59 ruling is that the verdict is not against the weight of the evidence . . . we reverse for a clear abuse of discretion only where there is an *absolute absence of evidence* to support the jury's verdict." *Kode v. Carlson*, 596 F.3d 608, 612 (9th Cir. 2010) (quotation marks and citation omitted).

Here, the jury had sufficient evidence to find that the "Process Posts" constituted a fair use of the Photograph. Section 107 of the Copyright Act of 1976 sets forth an unexhaustive list of factors for consideration to determine whether a work is not infringing, but rather is a fair use, including, relevant here, (1) "the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes," and (2) "the effect of the use upon

the potential market for or value of the copyrighted work."[3]  17 U.S.C. § 107.

First, the jury had sufficient evidence from which to conclude that the "Process Posts" had a different "purpose and character" than the Photograph.  The "central question" in analyzing the first fair use factor is "whether the new work merely supersede[s] the objects of the original creation . . . (supplanting the original), or instead adds something new, with a further purpose or different character." *Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith*, 598 U.S. 508, 528 (2023) (alteration in original) (citation and internal quotation marks omitted).  Here, the jury had sufficient evidence from which to find that the purpose of the Photograph was to display a portrait of Miles Davis, whereas the purpose of the "Process Posts" were to show KVD "in the process of creating a tattoo."

The jury also had sufficient evidence to conclude that the "Process Posts" were not "of a commercial nature."  17 U.S.C. § 107(1).  For works "of a commercial nature," the connection between the challenged use and the commercial benefits must be "direct" and cannot be too attenuated.  *Sega Enters. Ltd. v. Accolade, Inc.*, 977 F.2d 1510, 1522 (9th Cir. 1992), *as amended* (Jan. 6, 1993).  True, KVD and HVT promote and sell products and services through their

_____

[3] KVD conceded that the other two fair use factors, "the nature of the copyrighted work" and "the amount and substantiality of the portion used in relation to the copyrighted work as a whole" weigh against a finding of fair use.

social media accounts. But the record contains no evidence "direct[ly]" linking the social media posts to any sort of profit resulting from the use of the Photograph in these posts. *Sega Enters.*, 977 F.2d at 1522. Even if reasonable minds could disagree on the ultimate "commerciality" of this use, there is sufficient evidence here to support the jury's implied findings on this factor. *Kode*, 596 F.3d at 612.

Second, the jury had sufficient evidence to find that "the effect of the use upon the potential market for or value of the copyrighted work" favored a finding of fair use. 17 U.S.C. § 107(4). To negate the defense of fair use, Sedlik must "show that if the challenged use should become widespread, it would adversely affect the *potential* market for the copyrighted work." *Harper & Row Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 568 (1985) (citation and internal quotation marks omitted). Sedlik argues that he presented evidence of market harm in the form of past licenses for the Photograph. But it is extremely unlikely that someone who would otherwise license the Photograph would instead crop the pixelated version of it featured in the social media posts. *See Kelly v. Arriba Soft Corp.*, 336 F.3d 811, 821 (9th Cir. 2003) (holding that the use of copyrighted photographs in thumbnail images did not harm the licensing market for the original works). Nor did Sedlik present any evidence that he had previously licensed the Photograph's use for social media *specifically*, which is the specific use being challenged here.

3.     To the extent that the district court erred in leaving the ultimate fair use determination to the jury,[4] this error was invited by Sedlik.  Under the invited error doctrine, a party cannot attack on appeal a jury instruction proposed by that party.  *See United States v. Guthrie*, 931 F.2d 564, 567 (9th Cir. 1991).  The record demonstrates that Sedlik himself requested that the question of fair use be put to the jury.  As the district court explained, Sedlik was "intimately involved in the drafting of the jury instructions and the verdict form.  Never once did he suggest that the issue of fair use was not fit for a jury, or that the Court should bifurcate the verdict between factual and legal issues."

4.     To the extent the district court erred in formulating Jury Instructions 24 and 25,[5] any error was harmless.  "We review for abuse of discretion the district court's formulation of [jury] instructions and review de novo whether the instructions accurately state the law."  *Skidmore as Tr. for Randy Craig Wolfe Tr. v. Led Zeppelin*, 952 F.3d 1051, 1065 (9th Cir. 2020).  In the civil context, a jury instruction error requires reversal unless the error is "more probably than not harmless."  *Caballero v. City of Concord*, 956 F.2d 204, 206 (9th Cir. 1992).

---

[4] Sedlik objects to Jury Instruction No. 27, which read, in part, "[i]t is up to you to decide whether all relevant factors, when considered fully and together, favor or disfavor fair use."

[5] Sedlik argues that the jury instructions on the second fair use factor (Jury Instruction 24) and the third fair use factor (Jury Instruction 25) were erroneous because they did not inform the jury that the district court had ruled on summary judgment that those factors weighed against fair use as a matter of law.

Jury Instruction 24 stated that "the [second fair use] factor is more likely to weigh against fair use," and KVD conceded during closing argument that "Factor 2 weighs against" fair use as it pertains to the "Process Posts." Thus, any error in failing to inform the jury that the district court had ruled at summary judgment that the second fair use factor weighed against fair use was harmless.

Similarly, KVD explicitly informed the jury during closing argument that factor three weighed against a finding of fair use. Thus, to the extent that the district court erred in formulating Jury Instruction 25, any such error is harmless.

5. The district court did not abuse its discretion in excluding Sedlik's lay testimony. We review the district court's evidentiary rulings for abuse of discretion, and we reverse only where "such nonconstitutional error more likely than not affected the verdict." *White v. Ford Motor Co.*, 312 F.3d 998, 1006 (9th Cir. 2002) (citation omitted).

The district court did not abuse its discretion in finding that Sedlik's testimony on what he would have charged for a hypothetical tattoo license was too speculative to assist the jury in its evaluation of market harm. Sedlik had previously issued just one license for a tattoo—a retroactive license for which he charged zero dollars but noted the "$5,000 license fee [was] waived as a professional courtesy." Similarly, the district court did not abuse its discretion in excluding Sedlik's "concern[]" that KVD's use of the Photograph would encourage

others to use Sedlik's work, given that this concern was also likely too speculative to assist the jury in its evaluation of market harm. The district court did not abuse its discretion in excluding Sedlik's expert rebuttal testimony on copyright infringement norms in the tattoo industry and whether tattoo artists should seek licenses for use of artistic designs.[6] As the district court explained, Sedlik's experience as an expert in image licensing does not necessarily translate into expertise on the tattoo industry. Nor does Sedlik's experience in helping to create aspirational licensing "standards" necessarily make him an expert on actual custom and practice in the tattoo industry. The district court was thus well within its "broad discretion" to conclude that Sedlik was not qualified to testify as an expert. *LuMetta v. U.S. Robotics, Inc.*, 824 F.2d 768, 771 (9th Cir. 1987).

**AFFIRMED.**

---

[6] We need not reach the issue of whether a rebuttal expert may testify when there is no expert testimony to rebut, as was the case here, because we hold that the district court was within its discretion to conclude that Sedlik was not qualified to testify as an expert in the first place.