**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

SOFA ENTERTAINMENT, INC., a
California corporation,
*Plaintiff-Appellant*,

v.

DODGER PRODUCTIONS, INC., a New
York corporation; DODGERS
THEATRICALS, LTD., a New York
Corporation,
*Defendants-Appellees*.

No. 10-56535

D.C. No.
2:08-cv-02616-
DMG-PJW

SOFA ENTERTAINMENT, INC., a
California corporation,
*Plaintiff-Appellant*,

v.

DODGER PRODUCTIONS, INC., a New
York corporation; DODGERS
THEATRICALS, LTD., a New York
Corporation,
*Defendants-Appellees*.

No. 10-57071

D.C. No.
2:08-cv-02616-
DMG-PJW

OPINION

Appeal from the United States District Court
for the Central District of California
Dolly M. Gee, District Judge, Presiding

Argued and Submitted
February 5, 2013—Pasadena, California

Filed March 11, 2013

Before: Diarmuid F. O'Scannlain, Stephen S. Trott, and
Richard R. Clifton, Circuit Judges.

Opinion by Judge Trott

## SUMMARY[*]

### Copyright

Affirming the district court's summary judgment and award of attorneys' fees in a copyright infringement suit regarding a seven-second clip of Ed Sullivan's introduction of the Four Seasons on *The Ed Sullivan Show*, the panel held that the defendants were entitled to prevail on their fair use defense as a matter of law.

The defendants used the clip in *Jersey Boys*, their musical about the Four Seasons, to mark a historical point in the band's career. The panel held that this was a fair use because by using the clip for its historical significance, the defendants

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

had imbued it with new meaning and had done so without usurping whatever demand there was for the original clip.

---

## COUNSEL

Jaime W. Marquart, Baker Marquart LLP, Los Angeles, California, for Plaintiff-Appellant.

Walter R. Sadler, Leopold, Petrich & Smith, P.C., Los Angeles, California; David S. Korzenik, Miller Korzenik Sommers, LLP, New York, New York, for Defendants-Appellees.

---

## OPINION

TROTT, Circuit Judge:

This is a copyright infringement suit over a seven-second clip of Ed Sullivan's introduction of the Four Seasons on *The Ed Sullivan Show*. Appellees Dodger Productions, Inc. and Dodger Theatricals, Ltd. (collectively "Dodger") used the clip in their musical about the Four Seasons, *Jersey Boys*, to mark a historical point in the band's career.

Appellant SOFA Entertainment, Inc. ("SOFA") claims Dodger infringed its copyright in the clip and cannot justify its unlicensed use of the clip as "fair use." SOFA is mistaken. By using the clip for its biographical significance, Dodger has imbued it with new meaning and did so without usurping whatever demand there is for the original clip. Dodger is entitled to prevail on its fair use defense as a matter of law

and to retain the attorneys' fees award granted by the district court.

# I

## A.

SOFA owns copyright in a library of film, television, and other media, which it licenses for a fee. SOFA's library includes the entire run of *The Ed Sullivan Show*, which lasted from 1948 until 1971. The show's longevity was due to Sullivan's talent for spotting talent. At issue in this appeal is a seven-second clip from the January 2, 1966, episode of *The Ed Sullivan Show* wherein Sullivan introduces the band the Four Seasons ("the clip").

Dodger produced the musical *Jersey Boys*. *Jersey Boys* is a historical dramatization about the Four Seasons and the lives of its members – Tommy DeVito (Spring), Bob Gaudio (Summer), Nick Massi (Fall), and Frankie Valli (Winter). Each band member narrates one of the play's four acts, and each act offers that band member's take on a period in the Four Seasons' history.

The clip is shown at the end of the first act. Bob Gaudio stands to the side of the stage and addresses the audience: "Around this time there was a little dust-up called The British Invasion. Britannia's ruling the air waves, so we start our own American revolution. The battle begins on Sunday night at eight o'clock and the whole world is watching." As Gaudio speaks, the rest of the band is seen on a CBS studio stage preparing for their performance on *The Ed Sullivan Show*.

Just after Gaudio finishes his lines, the clip is shown on screen hanging over the center of the stage.  Ed Sullivan assumes his "signature pose" and introduces the band to his studio and television audiences: "Now ladies and gentlemen, here, for all of the youngsters in the country, the Four Seasons . . . ."  As he concludes, Sullivan turns and, with an extended arm and open palm, directs the theater audience's attention to the stage.  The screen goes dark, and the actors perform a rendition of the song "Dawn."

When the song ends, Gaudio resumes his position at the edge of the stage and addresses the audience again:

> We weren't a social movement like The Beatles.  Our fans didn't put flowers in their hair and try to levitate the Pentagon.  Maybe they should have.  Our people were the guys who shipped overseas . . . and their sweethearts.  They were factory workers, truck drivers.  The kids pumping gas, flipping burgers.  The pretty girl with circles under her eyes behind the counter at the diner.  They were the ones who really got us, and pushed us over the top.

**B.**

This suit began after Andrew Solt, SOFA's founder, attended a performance of *Jersey Boys* and realized that the clip appeared in the play.  Upon determining that Dodger was using the clip without SOFA's permission or license, SOFA sued Dodger for copyright infringement.  Dodger answered by asserting that its use of the clip constituted "fair use" under 17 U.S.C. § 107.

Both parties moved for summary judgment on Dodger's fair use affirmative defense.  After a thorough discussion of the factors listed in § 107, the district court wholeheartedly agreed with Dodger that its use of the clip was fair.

In light of Dodger's success at summary judgment, the district court granted Dodger's request for $155,000.00 in attorneys' fees and costs.  The district court viewed SOFA's infringement claim as objectively unreasonable and determined that awarding fees would deter future lawsuits that might chill the creative endeavors of others.

SOFA timely appeals the district court's summary judgment and the award of attorneys' fees to Dodger.

## II

Whether Dodger's use of the clip constitutes fair use is a mixed question of law and fact that we review de novo. *Monge v. Maya Magazines, Inc.*, 688 F.3d 1164, 1170 (9th Cir. 2012).  The district court's award of attorneys' fees to Dodger is reviewed for an abuse of discretion.  *Berkla v. Corel Corp.*, 302 F.3d 909, 917 (9th Cir. 2002).

## III

### A.  Fair Use

The Copyright Act exists "'to stimulate artistic creativity for the general public good.'"  *Mattel, Inc. v. MGA Entm't, Inc.*, –F.3d–, 2013 WL 264645, at *2 (9th Cir. Jan. 24, 2013) (quoting *Twentieth Century Music Corp v. Aiken*, 422 U.S. 151, 156 (1975)).  It does so by granting authors a "special reward" in the form of a limited monopoly over their works.

*Harper & Row, Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 546 (1985).  However, an overzealous monopolist can use his copyright to stamp out the very creativity that the Act seeks to ignite.  *Stewart v. Abend*, 495 U.S. 207, 236 (1990).  To avoid that perverse result, Congress codified the doctrine of fair use.  *Id.*

17 U.S.C. § 107 states, "[T]he fair use of a copyrighted work . . . for purposes such as criticism, comment, news reporting, teaching . . . , scholarship, or research [] is not an infringement of copyright."   It lists four factors to guide courts in their analysis:

> (1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;
>
> (2) the nature of the copyrighted work;
>
> (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and
>
> (4) the effect of the use upon the potential market for or value of the copyrighted work.

*Id.*

Congress's guidance, however, has not always been helpful.  Many fair use cases still manage to approach "'the metaphysics of the law, where the distinctions are, or at least may be, very subtle and refined, and, sometimes, almost evanescent.'"  *Monge*, 688 F.3d at 1171 (quoting *Folsom v.*

*Marsh*, 9 F. Cas. 342, 344 (No. 4901) (C.C.D. Mass. 1841)). Fortunately, this is not one of those cases.  As our application of the statutory factors will confirm, Dodger's use of the clip is undoubtably "fair."

### i.   The Purpose and Character of the Use

The central inquiry under the first factor is whether the new work is "transformative."  *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 579 (1994).  Transformative works "add[] something new" to an existing work, endowing the first with "new expression, meaning, or message," rather than "merely supersed[ing] the objects of the original creation." *Id.*  (internal quotation marks omitted).

Dodger references the Four Seasons' performance on the January 2, 1966 episode of *The Ed Sullivan Show* to mark an important moment in the band's career.  At that point in rock & roll history, many American bands were pushed into obscurity by the weight of the "British Invasion," which was kicked off by the Beatles' performance on *The Ed Sullivan Show*.  The Four Seasons, however, thrived.  Being selected by Ed Sullivan to perform on his show was evidence of the band's enduring prominence in American music.  By using it as a biographical anchor, Dodger put the clip to its own transformative ends.  *See Elvis Presley Enters., Inc. v. Passport Video*, 349 F.3d 622, 629 (9th Cir. 2003) (recognizing that the defendant's "use of many of the television clips [of Elvis's performances] is transformative because they are cited as historical reference points"), *overruled on other grounds as stated in Flexible Lifeline Sys., Inc. v. Precision Lift, Inc.*, 654 F.3d 989, 995 (9th Cir. 2011) (per curiam); *see also Bill Graham Archives v. Dorling Kindersley Ltd.*, 448 F.3d 605, 609 (2d Cir. 2006)

(concluding that the use of Grateful Dead concert posters to comment on and commemorate the performances they were designed to promote was transformative).

SOFA's argument that the clip was used for its own entertainment value is not supported by the record. Moreover, because Dodger's use of the clip is transformative, the fact that *Jersey Boys* is a commercial production is of little significance. *Campbell*, 510 U.S. at 579. Therefore, the first fair use factor heavily favors Dodger.

### ii.  The Nature of the Copyrighted Work

The second fair use factor recognizes that some works – generally creative works, like fictional stories – "are closer to the core of intended copyright protection than others." *Id.* at 586.  An alleged infringer will have a more difficult time establishing fair use when he appropriates a work of that nature. *Id.*  While the entire episode of *The Ed Sullivan Show* or the individual performances may be near to the core of copyright, the clip conveys mainly factual information – who was about to perform.  Therefore, the second factor also favors Dodger.

### iii. The Amount and Substantiality of the Portion Used

The third factor looks to the quantitative amount and qualitative value of the original work used in relation to the defendant's justification for the use. *Id.* 586–88.  SOFA does not challenge the conclusion that the seven-second clip is quantitatively insignificant, but argues that Dodger "attempted to capitalize on the central and most beloved part of *The Ed Sullivan Show*, namely, Ed Sullivan's introduction

of popular new rock and roll acts," by incorporating the clip into the play.  SOFA's argument is flawed in two respects.

First, the seven-second introduction is hardly qualitatively significant.  Sullivan simply identifies the group that is about to perform and the section of his audience to whom the Four Seasons would appeal.  It is doubtful that the clip on its own qualifies for copyright protection, much less as a qualitatively significant segment of the overall episode.  *See Murray Hill Publ'ns, Inc. v. ABC Commc'n, Inc.*, 264 F.3d 622, 633–34 (6th Cir. 2001) (holding that the line "J.P. on J.R. in the A.M." served only a functional purpose, i.e., identifying the radio program, the radio station, and the broadcast time, and was not subject to copyright protection), *overruled in part on other grounds by Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154 (2010).

Second, SOFA contorts the Supreme Court's use of the phrase "distinctive expression" in *Harper & Row, Publishers, Inc. v. Nation Enterprises*, 471 U.S. 539, 565 (1985), to give the false impression that Mr. Sullivan's "trademark gesticulation and style" is copyrightable.  Copyright only attaches to an original work fixed in a tangible medium of expression, never in the underlying ideas or facts.  *Id.* at 547. The Court used the words "distinctive expression" to explain that defendant had copied sections of President Ford's memoirs that contained Mr. Ford's writing, as opposed to the events he was discussing.  *Id.* at 565.

Certainly movement and intonation are elements in an original performance, but SOFA's argument is not limited to Sullivan's performance in the clip.   It is Sullivan's charismatic personality that SOFA seeks to protect. Charisma, however, is not copyrightable.  *See Downing v.*

*Abercrombie & Fitch*, 265 F.3d 994, 1003–04 (9th Cir. 2001) (holding that a person's name and likeness are outside the scope of copyright); 1 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 1.01[B][1][c] at 1–30 (2012) ("A *persona* can hardly be said to constitute a 'writing' of an 'author.'") (footnotes omitted).

### iv.  The Market Effect

The fourth factor requires courts to consider the secondary use's impact on the market for the original work and the market for derivative works, including if the defendant's actions became "unrestricted and widespread." *Campbell*, 510 U.S. at 590 (internal quotation marks omitted). Where the secondary use is not a substitute for the original and does not deprive the copyright holder of a derivative use, the fourth factor weighs in favor of fair use.  *See id.* at 591 ("[W]hen . . . the second use is transformative, market substitution is at least less certain . . . ."); *Ty, Inc. v. Publ'n Int'l Ltd.*, 292 F.3d 512, 517–18 (7th Cir. 2002) (stating that complementary uses, in the sense that a book review is complementary to the book it discusses, support a finding of fair use).

*Jersey Boys* is not a substitute for *The Ed Sullivan Show*. The clip is seven seconds long and only appears once in the play.  Dodger does not reproduce *Jersey Boys* on videotape or DVD, which would allow for repeated viewing of the clip. Dodger's use of the clip advances its own original creation without any reasonable threat to SOFA's business model. Therefore the fourth factor also favors a finding of fair use.

### v.   Balancing the Factors

In the end, we are left with the following conclusion: Dodger's use of the clip did not harm SOFA's copyright in *The Ed Sullivan Show*, and society's enjoyment of Dodger's creative endeavor is enhanced with its inclusion.  This case is a good example of why the "fair use" doctrine exists.

## B.  Attorneys' Fees

Section 505 of the Copyright Act gives discretion to district courts to grant to the prevailing party a "reasonable attorney's fee."  17 U.S.C. § 505.  "The most important factor in determining whether to award fees under the Copyright Act, is whether an award will further the purposes of the Act."  *Mattel, Inc.*, 2013 WL 264645 at *2.  To reiterate, the Act's "primary objective" is to "encourage the production of original literary, artistic, and musical expression for the good of the public."  *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 524 (1994).  While no longer a prerequisite to a fee award, the "objective unreasonableness (both in the factual and in the legal components of the case)" of a losing party's claim can be a relevant indicator of whether the Act's primary objective is being served by the litigation.  *Id.* at 534 n.19 (internal quotation marks omitted); *see also Berkla*, 302 F.3d at 924 ("[F]rivolousness was appropriately treated as one among many considerations in denying fees.").

In light of the education SOFA received as the plaintiff in *Elvis Presley Enterprises*, SOFA should have known from the outset that its chances of success in this case were slim to none.  Moreover, we agree with the district court that "lawsuits of this nature . . . have a chilling effect on creativity insofar as they discourage the fair use of existing works in the

creation of new ones." The fair use doctrine is an integral part of copyright law precisely because it gives authors "breathing space within the confines of copyright" to build upon their predecessors' works. *Campbell*, 510 U.S. at 579. When a fee award encourages a defendant to litigate a meritorious fair use claim against an unreasonable claim of infringement, the policies of the Copyright Act are served. *Fogerty*, 510 U.S. at 527. Therefore, we conclude that the district court's award of attorney fees to Dodger was justified.

**AFFIRMED.**