**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

DERECK SELTZER,
*Plaintiff-Appellant*,

v.

GREEN DAY, INC., a corporation;
GREEN DAY TOURING, INC., a
corporation; GREEN DAY, a
partnership; BILLIE JOE
ARMSTRONG, an individual; FRANK
EDWIN WRIGHT, III, an individual,
AKA Tre Cool; MICHAEL RYAN
PRITCHARD, an individual, AKA
Dirnt Mike; WARNER BROS.
RECORDS, INC., a corporation;
INFECT PRODUCTIONS, a partnership;
ROGER STAUB, an individual;
PERFORMANCE ENVIRONMENTAL
DESIGN, a business entity (form
unknown),
*Defendants-Appellees*.

No. 11-56573

D.C. No.
2:10-cv-02103-
PSG-PLA

DERECK SELTZER,
         *Plaintiff-Appellant*,

v.

GREEN DAY, INC., a corporation;
GREEN DAY TOURING, INC., a
corporation; GREEN DAY, a
partnership; BILLIE JOE
ARMSTRONG, an individual; FRANK
EDWIN WRIGHT, III, an individual,
AKA Tre Cool; MICHAEL RYAN
PRITCHARD, an individual, AKA
Dirnt Mike; WARNER BROS.
RECORDS, INC., a corporation;
INFECT PRODUCTIONS, a partnership;
ROGER STAUB, an individual;
PERFORMANCE ENVIRONMENTAL
DESIGN, a business entity (form
unknown),
         *Defendants-Appellees*.

No. 11-57160

D.C. No.
2:10-cv-02103-
PSG-PLA

OPINION

Appeal from the United States District Court
for the Central District of California
Philip S. Gutierrez, District Judge, Presiding

Argued and Submitted
February 5, 2013—Pasadena, California

Filed August 7, 2013

Before: Diarmuid F. O'Scannlain, Stephen S. Trott, and Richard R. Clifton, Circuit Judges.

Opinion by Judge O'Scannlain

## SUMMARY[*]

### Copyright / Fair Use

The panel affirmed the district court's summary judgment in favor of the defendants but vacated the district court's award of attorneys' fees in an artist's action alleging violations of the Copyright Act and the Lanham Act in a rock band's unauthorized use of an illustration in the video backdrop of its stage show.

The panel held that the video backdrop was a fair use under the Copyright Act. First, the purpose and character of the use was transformative because the video altered the expressive content or message of the illustration, and the use was not overly commercial. Second, the illustration was a creative work, but its nature included its status as a widely disseminated work of street art. Third, the defendants copied most of the illustration, but it was not meaningfully divisible. Fourth, the video backdrop did not affect the value of the illustration.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

The panel affirmed the grant of summary judgment on Lanham Act claims on the basis that the artist failed to establish any trademark rights.

Vacating the district court's award of attorneys' fees to the defendants under the Copyright Act, the panel held that, despite the defendants' success on the fair use defense, the plaintiff did not act objectively unreasonably.

---

**COUNSEL**

William Nathan Canby, Rosenfeld, Meyer & Susman, LLP, Beverly Hills, California argued the cause and filed a brief for the appellant. With him on the briefs were Todd W. Bonder and Ryan M. Lapine, Rosenfeld, Meyer & Susman, LLP, Beverly Hills, California.

Peter J. Anderson, Law Offices of Peter J. Anderson, a P.C., Santa Monica, CA, argued the cause and filed a brief for appellees. With him on the briefs were Bruce Isaacs, Wyman & Isaacs, LLP, Los Angeles, CA, and Lee S. Brenner and Keri E. Campbell, Kelley Drye & Warren LLP, Los Angeles, CA.

---

**OPINION**

O'SCANNLAIN, Circuit Judge:

We must decide whether a rock band's unauthorized use of an artist's illustration in the video backdrop of its stage show was a "fair use" under copyright law.

I

A

Plaintiff Derek Seltzer is an artist and illustrator. In 2003, he created *Scream Icon*, a drawing of a screaming, contorted face. Seltzer made copies of *Scream Icon*, including large posters and smaller prints with adhesive backs, which he has sold and given away. *See* Appendix A. Many *Scream Icon* posters have been plastered on walls as street art in Los Angeles and elsewhere. Since then, Seltzer has moved on to other projects, but at times he has used *Scream Icon* to identify himself and his work's presence by placing it on advertisements for his gallery appearances, and at some point he licensed it for use in a music video.

Defendant Roger Staub is a photographer and professional set-lighting and video designer. In 2008, Staub photographed a brick wall at the corner of Sunset Boulevard and Gardner Avenue in Los Angeles which was covered in graffiti and posters—including a weathered and torn copy of *Scream Icon*. See Appendix B. Staub found it "interesting" and saved this picture in his personal library.

Defendant Green Day is a rock band, and defendants Billie Joe Armstrong, Michael Pritchard, and Frank Wright are its musicians. Green Day has sold over 70 million records worldwide since its debut in 1987. In May of 2009, Green Day released its eighth studio album, *21st Century Breakdown*. In anticipation of the 2009–10 tour in support of this album, Green Day engaged defendant Performance Environment Design ("PED") to create the lighting, pyrotechnic effects, and video backdrops for the concert.

Subsequently, PED arranged for Staub to create the video backdrops for Green Day's performances.

B

Staub created a video backdrop for each of the thirty-two songs on Green Day's set list. Before making these backdrops, Staub repeatedly listened to *21st Century Breakdown* and studied the album art, which uses graffiti and street art as significant visual elements.

One of the songs for which Staub created a backdrop was the eighth song on the album, entitled "East Jesus Nowhere." Staub's stated goal was to convey the song's "mood, tone or themes." According to Staub, the theme of the song is "the hypocrisy of some religious people who preach one thing but act otherwise. . . . The song is about the violence that is done in the name of religion."

What Staub ultimately created for this song is the allegedly-infringing work at the heart of this case, an approximately four-minute-long video. The video depicts a brick alleyway covered in graffiti. As "East Jesus Nowhere" is performed, several days pass at an accelerated pace and graffiti artists come and go, adding new art, posters, and tags to the brick alleyway. The graffiti includes at least three images of Jesus Christ, which are defaced over the course of the video. Throughout the video, the center of the frame is dominated by an unchanging, but modified, *Scream Icon*. Staub used the photograph he had taken at Sunset and Gardner, cut out the image of *Scream Icon* and modified it by adding a large red "spray-painted" cross over the middle of the screaming face. He also changed the contrast and color and added black streaks running down the right side of the

face. Staub's image further differs from *Scream Icon* because Staub's original photograph was of a weathered, slightly defaced, and torn poster. *Scream Icon* is nonetheless clearly identifiable in the middle of the screen throughout the video.

Staub's video backdrop was played behind Green Day during the performance of "East Jesus Nowhere" at approximately seventy concerts from July 3, 2009, through November 12, 2009, and also during Green Day's performance of the song at the MTV Video Music Awards on September 13, 2009. At some point, Seltzer became aware that Green Day was using his art and on September 24, 2009 he wrote the band an e-mail alerting them to their unauthorized use stating that he would like to "work out a resolution to this issue." Apparently no resolution was possible, because on November 19, 2009, Seltzer registered a copyright in *Scream Icon*, and his counsel sent Green Day a cease-and-desist letter. Green Day subsequently stopped using the video backdrop.

## C

In March 2010, Seltzer filed the instant action. His First Amended Complaint alleges direct and contributory copyright infringement, violations of the Lanham Act, and various state law claims. After discovery, defendants (collectively, "Green Day") moved for summary judgment. They primarily argued that Staub's video backdrop was fair use under 17 U.S.C. § 107. The district court agreed and granted summary judgment on all claims.

Green Day then moved for attorneys fees under 17 U.S.C. § 505. The district court found that Seltzer's claims had been objectively unreasonable and granted the motion in full,

awarding the defendants a total of $201,012.50. Seltzer timely appeals both the grant of summary judgment and the grant of attorney's fees.

## II

The fair use doctrine "permits and requires courts to avoid rigid application of the copyright statute when, on occasion, it would stifle the very creativity which that law is designed to foster." *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 577 (1994) (internal quotation marks omitted). Consequently, 17 U.S.C. § 107 establishes that fair use of a copyrighted work is not an infringement of copyright and lays out four factors to apply when considering whether the use of a work is "fair":

> (1) the purpose and character of the use, including whether such use is of a commercial nature or is for non-profit educational purposes; (2) the nature of the copyrighted work; (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and (4) the effect of the use on the potential market for or value of the copyrighted work.

17 U.S.C. § 107. These four factors must all be explored, and all the results evaluated together, in light of the purposes of copyright. *Campbell*, 510 U.S. at 578.

Whether Green Day's use of Seltzer's *Scream Icon* constituted fair use is a mixed question of law and fact that we review de novo. *SOFA Entm't, Inc. v. Dodger Prods., Inc.*, 709 F.3d 1273, 1277 (9th Cir. 2013). Where no

material, historical facts are at issue and the parties dispute only the ultimate conclusions to be drawn from those facts, we may draw those conclusions without usurping the function of the jury. *Fisher v. Dees*, 794 F.2d 432, 436 (9th Cir. 1986). As the Supreme Court held in *Harper & Row Publishers, Inc. v. Nation Enter.*, "[w]here the district court has found facts sufficient to evaluate each of the statutory factors, an appellate court need not remand for further factfinding but may conclude as a matter of law that the challenged use does not qualify as a fair use of the copyrighted work." 471 U.S. 539, 564 (1985) (internal alterations and quotation marks omitted). As in *Fisher*, "[n]o material historical facts are at issue in this case. The parties dispute only the ultimate conclusion to be drawn from the admitted facts." 794 F.2d at 436.

## A

The first factor in the fair use inquiry is "the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes." § 107(1). The Supreme Court has stated that the "central purpose" of this factor is to see "whether and to what extent the new work is transformative." *Campbell*, 510 U.S. at 579. Works of this type "lie at the heart of the fair use doctrine's guarantee of breathing space within the confines of copyright, and the more 'transformative' the new work, the less will be the significance of other factors." *Id.* (internal citations omitted).

Although transformation is a key factor in fair use, whether a work is transformative is a often highly contentious topic. *See, e.g.*, *Cariou v. Prince*, 714 F.3d 694, 713–14 (2d Cir. 2013) (Wallace, J., concurring in part and dissenting in

part) (disagreeing with majority as to whether artists' use of certain copyrighted photographs was transformative; would remand for further fact finding); *Monge v. Maya Magazines, Inc.*, 688 F.3d 1164, 1185–88 (9th Cir. 2012) (M. Smith, J., dissenting) (disagreeing with majority as to whether a magazine's publication of wedding photographs was transformative); *Bouchat v. Balt. Ravens Ltd. P'ship*, 619 F.3d 301, 320–21 (4th Cir. 2010) (Niemeyer, J., dissenting) (disagreeing with majority as to whether the Baltimore Ravens football team's use of a "Flying B" logo was transformative). A leading treatise on this topic has lamented the frequent misuse of the transformation test, complaining that it has become a conclusory label which is "all things to all people." Melville B. Nimmer & David Nimmer, 4 Nimmer on Copyright § 13.05[A][1][b], 13-168–70 (2011) (internal quotation marks omitted); *see also id.* at 13-168–69 (listing cases which have "erroneous[ly] with[held]" the transformative label).

The plethora of cases addressing this topic means there is no shortage of language from other courts elucidating (or obfuscating) the meaning of transformation. To navigate these treacherous waters, we turn to the most definitive formulation of the test. The Supreme Court in *Campbell* stated that one work transforms another when "the new work . . . adds something new, with a further purpose or different character, altering the first with new expression, meaning or message." *Campbell*, 510 U.S. at 579. This understanding was drawn by the Court in large part from Second Circuit Judge Pierre Leval's 1990 article in the Harvard Law Review, *Toward a Fair Use Standard*, 103 Harv. L. Rev. 1105 (1990). In that article, Judge Leval further clarified his understanding of "transformative" works:

The use must be productive and must employ the quoted matter in a different manner or for a different purpose from the original. A quotation of copyrighted material that merely repackages or republishes the original is unlikely to pass the test; in Justice Story's words, it would merely "supersede the objects" of the original. If, on the other hand, the secondary use adds value to the original—if the quoted matter is used as raw material, transformed in the creation of new information, new aesthetics, new insights and understandings—this is the very type of activity that the fair use doctrine intends to protect for the enrichment of society.

*Id.* at 1111.

Applying this understanding, Green Day's use of *Scream Icon* is transformative. Green Day used the original as "raw material" in the construction of the four-minute video backdrop. It is not simply a quotation or a republication; although *Scream Icon* is prominent, it remains only a component of what is essentially a street-art focused music video about religion and especially about Christianity (images of Jesus Christ appear—and are defaced—several times during the course of the video).

The message and meaning of the original *Scream Icon* is debatable. To us, it appears to be a directionless anguished screaming face. Seltzer himself testified to his view of the meaning of the original piece: "It addresses themes of youth culture, skateboard culture, insider/outsider culture, . . . it's an iconic reference to a culture and time in Los Angeles when

the image was made." But regardless of the meaning of the original, it clearly says nothing about religion. With the spray-painted cross, in the context of a song about the hypocrisy of religion, surrounded by religious iconography, Staub's video backdrop using *Scream Icon* conveys "new information, new aesthetics, new insights and understandings" that are plainly distinct from those of the original piece. At his deposition, Seltzer seemed to acknowledge as much, when he stated that Staub's backdrop "tainted the original message of the image and [] made it now synonymous with lyrics, a video, and concert tour that it was not originally intended to be used with."

Although the law in this area is splintered, as discussed above, our conclusion on transformation is generally in line with other appellate authority on transformative use. In the typical "non-transformative" case, the use is one which makes no alteration to the *expressive content or message* of the original work. *See, e.g.*, *Monge*, 688 F.3d at 1176 (magazine publication of photos of secret wedding of celebrity was not transformative because it did not "alter[] the first [work] with new expression, meaning or message") (second alteration in original); *Elvis Presley Enters., Inc. v. Passport Video*, 349 F.3d 622, 629 (9th Cir. 2003) (use of copyrighted clips of Elvis's television appearances was not transformative when the clips were "played without much interruption, if any, . . . [and] serve[d] the same intrinsic entertainment value that is protected by Plaintiffs' copyrights."), *overruled on other grounds as stated in Flexible Lifeline Sys., Inc. v. Precision Lift, Inc.*, 654 F.3d 989, 995 (9th Cir.2011) (per curiam); *L.A. News Serv. v. CBS Broad., Inc.*, 305 F.3d 924, 938 (9th Cir. 2002) ("Merely plucking the most visually arresting excerpt from LANS's nine minutes of footage cannot be said to have added

anything new."), *as amended* 313 F.3d 1093 (9th Cir. 2002); *Ringgold v. Black Entm't Television, Inc.*, 126 F.3d 70, 79 (2d Cir. 1997) (use of a poster as decoration on a TV show not transformative because it was used for "precisely a central purpose for which it was created" and defendants had done nothing with the poster to add anything new).

In contrast, an allegedly infringing work is typically viewed as transformative as long as new expressive content or message is apparent. This is so even where—as here—the allegedly infringing work makes few physical changes to the original or fails to comment on the original. *See, e.g.*, *Cariou*, 714 F.3d at 708 (artist who altered and incorporated several copyrighted photographs into a series of paintings and collages engaged in transformative use as to most of the paintings because the images were presented with "fundamentally different aesthetic"); *Bill Graham Archives v. Dorling Kindersley Ltd.*, 448 F.3d 605, 608–09 (2d Cir. 2006) (use of concert posters in a timeline in a book on the history of the Grateful Dead was transformative; their use was as "historical artifacts" rather than for "artistic expression and promotion"); *Blanch v. Koons*, 467 F.3d 244, 252–53 (2d Cir. 2006) (artist who incorporated and altered copyrighted fashion photograph of a pair of women's legs as part of a larger work of art engaged in a transformative use); *Kelly v. Arriba Soft Corp.*, 336 F.3d 811, 818–20 (9th Cir. 2003) (use of exact replicas of artist's photographs as "thumbnail images" in a search engine was transformative because their purpose was completely transformed from their original use as fine art); *L.A. News Serv.*, 305 F.3d at 938–39 (inclusion of copyrighted clip in video montage, using editing to increase dramatic effect, was transformative).

We conclude, therefore, that Green Day's use of *Scream Icon* was transformative. Furthermore, although the statute instructs us to consider the "commercial nature" of a work (and Green Day's concert was undoubtedly commercial in nature) "the degree to which the new user exploits the copyright for commercial gain—as opposed to incidental use as part of a commercial enterprise—affects the weight we afford commercial nature as a factor." *Elvis Presley Enters.*, 349 F.3d at 627. Green Day's use of *Scream Icon* was only incidentally commercial; the band never used it to market the concert, CDs, or merchandise. Under these circumstances, the first fair use factor weighs in Green Day's favor.

B

The second factor that § 107 instructs us to consider is "the nature of the copyrighted work" which recognizes the fact that "some works are closer to the core of intended copyright protection than others." *Campbell*, 510 U.S. at 586. *Scream Icon* is a creative work, meriting strong protection under this factor.

Mitigating this factor in favor of Green Day is that we are instructed to consider the extent to which a work has been published. *Harper & Row Publishers, Inc.*, 471 U.S. at 564 ("The fact that a work is unpublished is a critical element of its 'nature.'"); *Kelly*, 336 F.3d at 820. "Published works are more likely to qualify as fair use because the first appearance of the artist's expression has already occurred." *Kelly*, 336 F.3d at 820. Here, as in *Kelly*, *Scream Icon* was widely disseminated, both on the internet and on the streets of Los Angeles before Green Day used it in their concerts. Accordingly, Seltzer controlled the "first public appearance"

of his work. *See Harper & Row Publishers, Inc.*, 471 U.S. at 564. This tends to weigh in favor of the fair use of that work.

Considering this factor as a whole, it weighs only slightly in Seltzer's favor.

C

The third factor looks to the quantitative amount and qualitative value of the original work used in relation to the justification for that use. *SOFA Entm't*, 709 F.3d at 1279; *see also Campbell*, 510 U.S. at 586. This factor captures the fact that an allegedly infringing work that copies little of the original is likely to be a fair use. *See, e.g.*, *SOFA Entm't*, 709 F.3d at 1279 (holding that Ed Sullivan's seven-second introduction of the Four Seasons band was both qualitatively and quantitatively insignificant). Here, Green Day copied most of *Scream Icon*, both quantitatively and qualitatively.

However, unlike an episode of the Ed Sullivan show or a book manuscript, *Scream Icon* is not meaningfully divisible. Given that fact, this court has acknowledged that this factor will not weigh against an alleged infringer, even when he copies the whole work, if he takes no more than is necessary for his intended use. *Kelly*, 336 F.3d at 820–21. As the Supreme Court has recognized, this factor necessarily overlaps somewhat with the first factor—the "extent of permissible copying varies with the purpose and character of the use." *Campbell*, 510 U.S. at 586–87. Here, as in *Kelly*, the use of the entire work was necessary to achieve Green Day's "new expression, meaning or message." *Id.* at 579; *see also Kelly*, 336 F.3d at 821.

Thus, this factor does not weigh against Green Day.

D

The fourth factor asks what effect the allegedly infringing use has on the "potential market for or value of the copyrighted work." 17 U.S.C. § 107(4). This factor should consider "the extent of market harm caused by the particular actions of the alleged infringer [and] also whether unrestricted and widespread conduct of the sort engaged in by the defendant would result in a substantially adverse impact on the potential market for the original." *Campbell*, 510 U.S. at 590 (internal quotation marks and citations omitted). Where the allegedly infringing use does not substitute for the original and serves a "different market function," such factor weighs in favor of fair use. *Id.* at 591; *SOFA Entm't*, 709 F.3d at 1280.

At Seltzer's deposition, he repeatedly testified that the value of his work was unchanged, but that he subjectively did not care for Green Day's use of his art. He admitted that no one had ever told him that he would not buy his work as a result of Green Day's use; instead, he claimed that *Scream Icon* was "tarnished" for him personally, but he did not view the piece as having lost any value.

Additionally, Green Day presented evidence that its video backdrop did not perform the same "market function" as the original. The original, created six years before Green Day's use, was primarily intended as street art. Green Day's allegedly infringing use, on the other hand, was never placed on merchandise, albums, or promotional material and was used for only one song in the middle of a three hour touring show. In this context, there is no reasonable argument that conduct of the sort engaged in by Green Day is a substitute for the primary market for Seltzer's art.

This factor also considers any impact on "traditional, reasonable, or likely to be developed markets." *Ringgold*, 126 F.3d at 81.  At some point, according to Seltzer's declaration, *Scream Icon* was used in a music video by a band named "People."  Seltzer provides no additional information about this licensing, including how much revenue he earned as a result, how the music video was used by the band, or how the music video used *Scream Icon*.  Without further context, this fact does not suffice to show that Green Day's use harmed any existing market or a market that Seltzer was likely to develop.

Thus, this factor weighs in Green Day's favor as well.

E

Our evaluation of all four factors inclines us to the ultimate conclusion that Green Day's use of Seltzer's *Scream Icon* was fair.  The purpose and character of the use was transformative and not overly commercial.  The nature of the work includes its status as a widely disseminated work of street art.  Green Day's use of the work was not excessive in light of its transformative purpose.  And Green Day's use did not affect the value of the piece or of Seltzer's artwork in general.  Additionally, we note that factor one and factor four have "dominated the case law" and are generally viewed as the most important factors; Green Day wins on both of these key points.  *Monge*, 688 F.3d at 1171.  Therefore, we are satisfied that the district court did not err in granting summary judgment on Seltzer's copyright infringement claims.

III

The district court also granted summary judgment to Green Day on Seltzer's Lanham Act claims.  The Lanham Act extends liability to any person who "uses in commerce any word, term, name, symbol, or device . . . which is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection or association of such person with another person . . . ."  15 U.S.C. § 1125(a).

The district court concluded that Seltzer failed to present evidence showing that he used the image as a mark in the sale of goods or services—that is, that he failed to establish trademark rights at all.  In order to acquire trademark rights, the mark must be used in the "ordinary course of trade" on goods or containers, or, if the nature of the goods makes that impractical, on documents associated with the goods or their sale.  *Brookfield Commc'ns v. West Coast Entm't Corp.*, 174 F.3d 1036, 1051–52 (9th Cir. 1999) (citing 15 U.S.C. § 1127).

Seltzer argues that *Scream Icon*'s placement on certain advertisements for his appearance at an art gallery show was sufficient to establish trademark rights.  But Seltzer has not presented any evidence that the use of the mark was "sufficiently public to identify or distinguish the marked goods in an appropriate segment of the public mind." *Id.* at 1052 (quoting *New West Corp. v. NYM Co. of Cal., Inc.*, 595 F.2d 1194, 1200 (9th Cir. 1979)).  Seltzer has failed to explain how these advertisements were distributed, who might have seen them, when they were distributed, to what shows they were connected and what was sold at those shows, or any other facts which might be necessary to evaluate whether *Scream Icon* is deserving of trademark protection.

Therefore the district court correctly granted summary judgment to Green Day on Seltzer's Lanham Act claims.[1]

IV

Finally, the district court awarded Green Day over $200,000 in attorneys fees. A district court's award of attorneys fees under 17 U.S.C. § 505 is reviewed for abuse of discretion. *Fantasy, Inc. v. Fogerty*, 94 F.3d 553, 556 (9th Cir. 1996). Under the abuse of discretion standard, the district court's findings of fact or its application of the legal standard to those findings of fact must be "illogical, implausible, or without support in inferences that may be drawn from facts in the record." *U.S. v. Hinkson*, 585 F.3d 1247, 1251 (9th Cir. 2009) (en banc).

The question presented in a case where a defendant makes a winning fair use defense is whether the successful defense of the action furthered the purposes of the Copyright Act. *Mattel Inc. v. Walking Mountain Prods.*, 353 F.3d 792, 816 (9th Cir. 2003). It is important to recall that the Supreme Court rejected the so-called British Rule where the loser pays; rather, attorneys fees are left up to the discretion of the district court. *See Fogerty v. Fantasy*, 510 U.S. 517, 533 (1994) (citing 17 U.S.C. § 505). As the district court correctly recited, courts deciding whether to award attorneys fees can look to five non-exclusive factors: (1) the degree of success

---

[1] This court has "consistently held that state common law claims of unfair competition and actions pursuant to California Business and Professions Code § 17200 are 'substantially congruent' to claims made under the Lanham Act." *Cleary v. News Corp.*, 30 F.3d 1255, 1262–63 (9th Cir. 1994). We similarly affirm the district court's grant of summary judgment on these claims.

obtained; (2) frivolousness; (3) motivation; (4) the objective unreasonableness of the losing party's factual and legal arguments; and (5) the need, in particular circumstances, to advance considerations of compensation and deterrence. *See Fogerty*, 510 U.S. at 534 n.19.

Significantly, the district court found that Seltzer's claim was objectively unreasonable. In making this finding, the district court relied on the facts that Seltzer lost at summary judgment, that three of the four fair use factors were in Green Day's favor, and that Seltzer's deposition testimony "effectively conceded that the use was transformative." This is in reference to Seltzer's statement at his deposition, referenced above, that the new work "tainted the original message" and "devalue[d] the original intent" of Scream Icon.

But, the mere fact that Seltzer lost cannot establish his objective unreasonability. *See Harris Custom Builders, Inc. v. Hoffmeyer*, 140 F.3d 728, 730 (7th Cir. 1998) ("How the court ruled, simply put, is not a proper concern [in determining the availability of § 505 fees]."). Further, we conclude that Green Day only won on two of the four fair use factors, rather than three as the district court concluded. And in any event, Seltzer's statement at his deposition—which the district court viewed as a "concession"—only expressed his opinion and could not concede the transformative nature of Green Day's work. *See Cariou*, 714 F.3d at 707 ("What is critical is how the work in question appears to the reasonable observer, not simply what an artist might say about a particular piece or body of work . . . . Rather than confining our inquiry to [the artist's] explanations of his artwork, we instead examine how the artworks may 'reasonably be perceived' . . ."). Thus, the facts relied on by the district

court do not lend any meaningful support to the notion that Seltzer's case was objectively unreasonable when he brought it.

This was a close and difficult case. We concluded that Seltzer's work was transformed by Green Day's use. But that transformation was far from obvious given Green Day's only slight alterations to the original. Furthermore, of the remaining three factors, one was in Seltzer's favor, one was in Green Day's favor, and one was neutral. There is simply no reason to believe that Seltzer "should have known from the outset that [his] chances of success in this case were slim to none." *SOFA Entm't*, 709 F.3d at 1280.

Therefore, we conclude that the district court clearly erred in finding that Seltzer acted objectively unreasonably, and vacate the award of attorneys fees.

**No. 11-56573 AFFIRMED; No. 11-57160 VACATED AND REMANDED.** All parties to bear their own costs on appeal.

**APPENDICES**



Appendix B

