[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 14-14525
Non-Argument Calendar
_____

D.C. Docket No. 1:12-cv-22211-JLK


RAANAN KATZ,
an individual,

                                                    Plaintiff - Appellant,

versus

GOOGLE INC.,
a Delaware corporation,

                                                    Defendant,

IRINA CHEVALDINA,
an individual,

                                                    Defendant - Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(September 17, 2015)

Before TJOFLAT, WILSON and BLACK, Circuit Judges.

PER CURIAM:

Raanan Katz holds the copyright to a candid photograph (the Photo) of himself in which his tongue protrudes askew from his mouth.  Katz considers the Photo unflattering and embarrassing.[1]  Irina Chevaldina copied the Photo into several scathing blog posts she wrote about Katz and his business practices.  Katz appeals the district court's grant of summary judgment to Chevaldina on his copyright infringement claims, brought pursuant to 17 U.S.C. § 501.  Katz argues the district court erred in finding Chevaldina was entitled to summary judgment based on her affirmative defense that her use of the Photo constituted fair use under 17 U.S.C. § 107.  Upon review, we affirm.

## I.  BACKGROUND

Katz is a minority investor in the Miami Heat basketball team and a commercial real estate tycoon who owns and operates shopping centers through corporate entities collectively known as RK Centers.  In February 2011, Seffi Magriso, a professional photographer, took a photograph of Katz while Katz was standing courtside at a basketball practice in Jerusalem.  The Photo is a candid headshot of Katz in which his eyebrows are arched sharply upwards and his tongue

---

[1] We make no independent determination as to whether the Photo is unflattering or embarrassing.  Construing the evidence in the light most favorable to Katz for the purposes of summary judgment, however, we accept Katz's own characterizations of the Photo as aesthetically displeasing.

is sticking out of his mouth.  In Katz's opinion, the Photo is "ugly," "embarrassing," and "compromising."  *Haaretz*, an Israeli newspaper, published the Photo online in an article about Katz's interest in buying the Hapoel Jerusalem basketball team.

Chevaldina is a disgruntled former tenant in one of Katz's shopping centers. She found the Photo through a Google image search.  Chevaldina created a blog devoted to sharply criticizing Katz and the business practices of RK Centers.  From May 3, 2011, to September 24, 2012, Chevaldina published 25 blog posts that reproduced the Photo and criticized Katz.  Chevaldina reproduced the Photo in her blog posts in three ways: (1) copied in its unaltered, original state; (2) accompanied by sharply worded captions; or (3) cropped and pasted into mocking cartoons.  For example, in a September 18, 2011 blog post where the Photo was copied in its unaltered, original state, Chevaldina lambasted Katz for allegedly ripping off a "young American Jewish single mother of [a] special needs child," calling him "the most immoral human-being in the world."  In a September 12, 2012, blog post, Chevaldina criticized Katz's litigation strategies as frivolous and copied the Photo with a caption across Katz's chest that says, "HE RIPPED-OFF SPECIAL NEEDS LITTLE JEWISH GIRL."  In a February 19, 2012, post about Katz's preparation for a deposition, Chevaldina cropped Katz's face and superimposed it against a cartoon dunce hat.

3

On June 3, 2012, Magriso assigned all of his rights in the Photo to Katz. Katz then filed a complaint against Chevaldina alleging direct copyright infringement.[2] The parties filed cross-motions for summary judgment. The magistrate judge entered a Report and Recommendation (R&R) that recommended granting summary judgment to Chevaldina because her use of the Photo constituted fair use. Katz timely filed objections to the R&R. The district court overruled the objections, adopted the R&R, and granted summary judgment to Chevaldina. Katz timely appealed.

## II.  STANDARD OF REVIEW

We review de novo a district court's grant of summary judgment, viewing all facts and reasonable inferences in the light most favorable to the nonmoving party. *Beal v. Paramount Pictures Corp.*, 20 F.3d 454, 458–59 (11th Cir. 1994). "Summary judgment is proper when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Id.*; *see* Fed. R. Civ. P. 56(a).

## III.  DISCUSSION

The only issue in this appeal is whether Chevaldina's use of the Photo in her blog posts constitutes fair use, as a matter of law, under Section 107 of the

---

[2]  Katz's original complaint also named Google Inc. as a defendant for contributory copyright infringement. Katz filed an amended complaint omitting Google Inc. as a defendant, but retaining the direct copyright infringement claim against Chevaldina.

Copyright Act.  Under Section 107, "[n]otwithstanding the provisions of sections 106 and 106A, the fair use of a copyrighted work . . . for purposes such as criticism, comment, news reporting, teaching (including multiple copies for classroom use), scholarship, or research, is not an infringement of copyright."  17 U.S.C. § 107.

In deciding whether a defendant's use of a work constitutes fair use, courts must weigh the following four factors: (1) the purpose and character of the allegedly infringing use; (2) the nature of the copyrighted work; (3) the amount of the copyrighted work used; (4) and the effect of the use on the potential market or value of the copyrighted work.  *Id.*  These four statutory factors are not to be treated in isolation from one another.  *See Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 578, 114 S. Ct. 1164, 1170–71 (1994).  Rather, they are "[a]ll are to be explored, and the results weighed together, in light of the purposes of copyright." *Id.*, at 578, 114 S. Ct. at 1171.  Based on our weighing of the factors discussed below, the district court did not err in granting summary judgment to Chevaldina because her use of the Photo in each blog post constituted fair use.[3]  We discuss each factor in turn.

---

[3]  Katz argues the district court erred by failing to perform a "work-by-work" analysis of the blog posts, *see Cambridge Univ. Press v. Patton*, 769 F.3d 1232, 1259 (11th Cir. 2014), and instead analyzed only the blog posts containing altered versions of the Photo.  This argument lacks merit.  In the R&R adopted by the district court, the magistrate judge outlined all 25 allegedly infringing blog posts, and noted that its finding of fair use applied to each post. Therefore, the district court did, in fact, perform the required "work-by-work" analysis.  The

A.  *Purpose and Character of the Work*

The first factor—the purpose and character of the allegedly infringing work—requires consideration of "(1) whether the use serves a nonprofit educational purpose, as opposed to a commercial purpose; and (2) the degree to which the work is a transformative use, as opposed to a merely superseding use, of the copyrighted work."  *Peter Letterese & Assocs., Inc. v. World Inst. of Scientology Enters.*, 533 F.3d 1287, 1309 (11th Cir. 2008) (quotation omitted). The district court did not err in concluding Chevaldina's use of the work was both noncommercial and transformative.

Every use of the Photo on the blog was of a primarily educational, rather than commercial, character.  Chevaldina unabashedly criticized and commented on the dealings of Katz, his businesses, and his lawyers.  Chevaldina's blog posts sought to warn and educate others about the alleged nefariousness of Katz, and she made no money from her use of the photo.  *See* 17 U.S.C. § 107 (designating "criticism" and "comment" as fair use).

Katz argues the Photo served a primarily commercial purpose because, in a March 4, 2012, blog post, Chevaldina said she was "in the process of writing a book 'Why RK Centers Was The Wrong Choice.'"  Thus, Katz argues, Chevaldina

---

district court was not required to write a prolix, unwieldy opinion with 25 separate sections devoted to each alleged instance of infringement.

6

used the Photo to advertise for commercial book sales. Chevaldina's reference to her intention to write a book about her experiences with Katz does not alone, however, transform the blog post into a commercial venture. Overall, the blog post retains her educational purpose of lambasting Katz and deterring others from conducting business with him. *See* March 4, 2012 Blog Post ("I hope my book will help ambitious people in their dream to be successful without selling the[ir] soul to the [d]evil."). Moreover, the link between Chevaldina's commercial gain and her copying of the Photo was attenuated given that Chevaldina never wrote a book nor made any profits whatsoever. *See Swatch Grp. Mgmt. Servs. Ltd. v. Bloomberg L.P.*, 756 F.3d 73, 83 (2d Cir. 2014) (discounting commercial nature of use where "the link between the defendant's commercial gain and its copying is attenuated such that it would be misleading to characterize the use as commercial exploitation" (quotations and alterations omitted)).

Chevaldina's use of the Photo was also transformative. A use is transformative when it "adds something new, with a further purpose or different character, altering the first with new expression, meaning, or message." *See Campbell*, 510 U.S. at 579, 114 S. Ct. at 1171. Chevaldina's use of the Photo was transformative because, in the context of the blog post's surrounding commentary, she used Katz's purportedly "ugly" and "compromising" appearance to ridicule and satirize his character. *See Swatch*, 756 F.3d at 84 ("Courts often find such uses

7

[of faithfully reproduced works] transformative by emphasizing the altered purpose or context of the work, as evidenced by the surrounding commentary or criticism."); *A.V. ex el Vanderhye v. iParadigms, LLC*, 562 F.3d 630, 639 (4th Cir. 2009) ("The use of a copyrighted work need not alter or augment the work to be transformative in nature."); *Suntrust Bank v. Houghton Mifflin Co.*, 268 F.3d 1257, 1270 (11th Cir. 2001) (finding transformative use where work was "principally and purposefully a critical statement").

Chevaldina's use of the Photo was noncommercial and transformative. Accordingly, the first factor weighs in favor of fair use.

B.  *Nature of the Copyrighted Work*

The second fair use factor—the nature of the copyrighted work— "recognizes that there is a hierarchy of copyright protection in which original, creative works are afforded greater protections than derivative works or factual compilations." *Suntrust*, 268 F.3d at 1271.  In evaluating this factor, courts consider (1) whether the work was previously published and (2) whether the work is primarily creative or factual.  *See Harper & Row Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 563–64, 105 S. Ct. 2218, 2232 (1985).

There is no dispute that the Photo was published prior to Chevaldina's use. As such, the time of publication weighs in favor of fair use.  *See Kelly v. Arriba*

*Soft Corp.*, 336 F.3d 811, 820 (9th Cir. 2003) (holding publication of images on internet before defendant's copying favored fair use).

The district court did not err in finding the Photo was primarily a factual work. "The law generally recognizes a greater need to disseminate factual works than works of fiction or fantasy." *Harper & Row*, 471 U.S. at 563, 105 S. Ct. at 2232. Photography is an art form that may require the photographer to make many important creative decisions. *See Leibovitz v. Paramount Pictures Corp.*, 137 F.3d 109, 116 (2d Cir. 1998) (stating a photographer "is entitled to protection for such artistic elements as the particular lighting, the resulting skin tone on the subject, and the camera angle that she selected"). The Photo, however, is merely a candid shot in a public setting, and there is no evidence in the record that Magriso, the photographer, attempted to convey ideas, emotions, or in any way influence Katz's pose, expression, or clothing. *See Fitzgerald v. CBS Broad., Inc.*, 491 F. Supp. 2d 177, 188 (D. Mass. 2007) (concluding candid photograph of mobster leaving police station was a primarily factual work). While Magriso's photojournalistic timing was fortuitous (at least from Chevaldina's perspective), this alone was not enough to make the creative gilt of the Photo predominate over its plainly factual elements.

The Photo was previously published and primarily factual. The second factor therefore weighs in favor of fair use.

9

## C. Amount of the Work Used

The third factor is "the amount and substantiality of the portion used in relation to the copyrighted work as a whole." 17 U.S.C. § 107(3). A court must ask whether the defendant has "helped [herself] overmuch to the copyrighted work in light of the purpose and character of the use." *Peter Letterese & Assocs.*, 533 F.3d at 1314 (quotation omitted). This factor "weighs less when considering a photograph—where all or most of the work often must be used in order to preserve any meaning at all—than a work such as a text or musical composition, where bits and pieces can be excerpted without losing all value." *Fitzgerald*, 491 F. Supp. 2d at 188; *see Seltzer v. Green Day, Inc.*, 725 F.3d 1170, 1178 (9th Cir. 2013) ("[U]nlike an episode of the Ed Sullivan show or a book manuscript, [a drawing] is not meaningfully divisible.").

The district court did not err in finding the third factor was neutral as applied to the blog posts incorporating the Photo. Though ten blog posts reproduced the Photo in its entirety and without alteration, to copy any less of the image "would have made the picture useless to [Chevaldina's] story" that Katz is a predatory commercial landlord. *See Núñez v. Caribbean Int'l News Corp.*, 235 F.3d 18, 24 (1st Cir. 2000). As such, the third factor neither weighs for nor against a finding of fair use.

D. *Effect of the Use on the Potential Market for the Work*

The fourth factor is "the effect of the use upon the potential market for or value of the copyrighted work." 17 U.S.C. 107(4). The "central question" is whether, assuming that everyone engaged in the conduct of the defendant, the use "would cause *substantial* economic harm such that allowing [the conduct] would frustrate the purposes of copyright by materially impairing [the defendant's] incentive to publish the work." *Cambridge Univ. Press v. Patton*, 769 F.3d 1232, 1276 (11th Cir. 2014).

The district court did not err in finding Chevaldina's use of the Photo would not materially impair Katz's incentive to publish the work. Katz took the highly unusual step of obtaining the copyright to the Photo and initiating this lawsuit specifically to *prevent* its publication. Katz profoundly distastes the Photo and seeks to extinguish, for all time, the dissemination of his "embarrassing" countenance. Due to Katz's attempt to utilize copyright as an instrument of censorship against unwanted criticism, there is no potential market for his work. While we recognize that even an author who disavows any intention to publish his work "has the right to change his mind," *see Monge v. Maya Magazines, Inc.*, 688 F.3d 1164, 1181 (9th Cir. 2012) (quotation omitted), the likelihood of Katz changing his mind about the Photo is, based on the undisputed evidence in the record, incredibly remote. Since there is no evidence Chevaldina's use of the

11

Photo had or would have any impact upon any actual or potential market, the fourth factor weighs in favor of fair use.

## IV.  CONCLUSION

Three factors in our fair use inquiry—the purpose and character of the work, the nature of the work, and the effect of the use on the potential market—weigh in favor of Chevaldina.  The amount and substantiality of the work is neutral.  After weighing all four factors, our analysis tilts strongly in favor of fair use.  The district court did not err in granting summary judgment to Chevaldina because every reasonable factfinder would conclude the inclusion of the Photo in her blog posts constituted fair use.

For the foregoing reasons, we affirm the district court's grant of summary judgment to Chevaldina.[4]

**AFFIRMED.**

---

[4]  We also deny Katz's motion to strike Chevaldina's supplemental authorities.